## Pittsburgh Paving Company, for use, *v.* Pittsburgh, Appellant.

Argued April 21, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Anne X. Alpern,* First Assistant City Solicitor, with her *Churchill M. Mehard,* City Solicitor, for appellant.

*Lee C. Beatty,* with him *J. C. McIlwain,* for appellee.

OPINION BY MR. JUSTICE BARNES, October 6, 1938:

On June 11, 1929, pursuant to proceedings in the Court of Quarter Sessions of Allegheny County, the electorate of the Borough of Overbrook, which was contiguous to the City of Pittsburgh, voted in favor of annexation to the city. The effective date of annexation was fixed by the court as January 6, 1930. During these six intervening months between the election and the annexation, the borough council entered into contracts for twenty-four street improvement projects. Sixteen of these contracts were awarded to the legal plaintiff, the Pittsburgh Paving Company. As construction under the contracts proceeded, certificates of indebtedness, representing payments on account of work actually completed, were issued to the contractor.

The present action of assumpsit is brought by the Iron and Glass Dollar Savings Bank of Birmingham, as the assignee of the Pittsburgh Paving Company, of twenty such certificates issued to the company for work

done under fourteen of the contracts.[1]  Plaintiff claims
to be entitled to recover from the City of Pittsburgh the
unpaid balance of these certificates, amounting to $83,-
544.13, (a) upon the certificates themselves, as express
contracts, or (b) upon implied contracts for the fair
value of the work performed.[2]  It is not disputed that
the certificates which plaintiff holds fairly represent the
value of the work for which they were given.  By stip-
ulation the case was tried by the court without a jury.
The trial judge, after lengthy hearings, held plaintiff to
be entitled to judgment for the full amount of its claim,
with interest.  The defendant's exceptions to this adjudi-
cation were dismissed by the court in banc, whereupon
this appeal followed.

The city refuses to make payment of the certificates
held by plaintiff, on the ground that they are based upon
contracts which are invalid and void.  It contends that
in making these contracts the borough council violated
article IX, section 8, of the Constitution of 1874, which
limits the debt which may be incurred without a vote of
the people to two per cent of the assessed value of the
taxable property within the borough.  The city also
takes the position that the certificates of indebtedness
subsequently issued are in themselves void as represent-
ing debt created by the council in excess of the constitu-
tional limit.

---

[1] Each certificate is an acknowledgment of a debt due in a stated
amount by the borough to the paving company.  It is executed by
the proper officers of the borough under its corporate seal.  It re-
fers to the particular improvement upon which the debt was in-
curred, is expressly made nonnegotiable, and is payable upon a
specified due date, with interest.  Each certificate was assigned to
the plaintiff bank and the assignment duly accepted by the borough.

[2] The Act of April 28, 1903, P. L. 332, supplemented by the Act
of May 6, 1915, P. L. 272, provides: "All the indebtedness of each
city, borough, township, or part of a township, annexed to a con-
tiguous city . . ., as well as the indebtedness of the city to which
the same are annexed, shall be paid by the city as enlarged by such
annexation; . . ."

The contracts for the various street improvements, referred to as projects, were entered into by the borough council in five groups, as follows: On July 11, 1929, there were awarded three contracts (Projects 7 to 9, inclusive), for a total of $44,677.50; on August 8, 1929, ten contracts (Projects 10 to 19, inclusive), for $93,-739.95; on September 19, 1929, four contracts (Projects 20 to 23, inclusive), for $63,047; on October 17, 1929, one contract (Project 24), for $8,266.50; and on November 9, 1929, six contracts (Projects 25 to 30, inclusive), for $83,514. The amount of these contracts aggregated $293,244.95. However, it is apparent from the record that certificates of indebtedness issued by the borough were in excess of the contract prices.

All the contracts of the Pittsburgh Paving Company were completed, with the exception of six projects upon which work was stopped by order of the city on January 10, 1930. In viewers' proceedings, which have since been held in connection with the completed projects, benefits of $131,946.74 were assessed against abutting property, and damages amounting to $8,772.57 awarded to the property owners.

It is asserted by the city that the financial condition of the borough was such that the making of the contracts here involved caused councilmanic debt of the borough to be incurred to the extent of $290,749.16 in excess of the constitutional limitation. The court below rejected defendant's computation of the borough debt, and found that, before the contracts were made, the borough council had an unused borrowing capacity permitting the first six contracts to be entered into without exceeding the constitutional limit. While the remaining contracts, and the certificates of indebtedness issued thereunder, were held to be void, as violating the constitutional provision, the court, however, awarded plaintiff the full amount of its claim upon certificates issued under void as well as valid contracts. It decided that as the bor-

ough and the city had received the benefit of the work performed by the contractor, and as the city had taken over and accepted the improvements as part of its own public works, it was therefore liable "on an implied assumpsit for the fair and reasonable value of the work performed."

In common honesty a municipality is under an implied obligation to pay for benefits which it has received under agreements entered into by the municipal authorities: *Luzerne Twp. v. Fayette County*, 330 Pa. 247, and cases there cited. Nevertheless, this rule has no application where the effect of permitting recovery upon such a quasi-contractual claim would be to violate the constitutional prohibition against incurring municipal debt.

We have consistently adhered to the principle that contracts increasing debt beyond the constitutional allowance are not merely ultra vires but illegal and void: *O'Malley v. Olyphant Boro.*, 198 Pa. 525; *McAnulty v. Pittsburgh*, 284 Pa. 304; *Ward v. Pittsburgh*, 321 Pa. 414; see *Rettinger v. Pittsburgh School Board*, 266 Pa. 67.[3] The constitutional limitation cannot be circumvented by resort to the doctrine that a municipality which has borrowed money or accepted labor and materials and received the benefit thereof is bound on an implied contract to make payment: *Kreusler v. McKees Rocks School Dist.*, 256 Pa. 281; *Jackson v. Conneautville Borough School Dist.*, 280 Pa. 601. The quasi-contractual theory of recovery for the value of benefits received and accepted cannot be applied so as to permit municipalities to be plunged into debt by officials acting in utter disregard of the Constitution. See *Trevorton*

---

[3] In *Addyston Pipe & Steel Co. v. Corry*, 197 Pa. 41, and *Gable v. Altoona*, 200 Pa. 15, upon which the court below relied, it appears that the contracts pursuant to which the work was performed, although void, had been made in good faith as to their validity, in the belief that no debt had been incurred. Decisions of this court subsequently rendered showed that belief to have been erroneous. These two cases are clearly distinguishable.

*Water Supply Co. v. Zerbe Twp.,* 259 Pa. 31. It would completely nullify the unequivocal prohibition of the Constitution—adopted at a time when the evil of debt-ridden municipalities was fresh in the public mind—against saddling the future with obligations to pay for things the present desires but cannot legally contract to purchase: *Keller v. Scranton,* 200 Pa. 130. We cannot too strongly repeat that the mandate of the Constitution is not to be destroyed in this manner.

We realize that where, as here, performance is rendered upon a contract entered into with municipal officers apparently acting within their authority, it is a hardship upon the party whose labor and materials have been accepted and retained by the municipality to deny recovery for their value, because the municipal officials lacked power to incur the debt.

However, it is a general and fundamental principle of law that persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or its officers to make the contract or incur the debt: *O'Malley v. Olyphant Boro.,* supra; *Kreusler v. McKees Rocks School District,* supra; *Willis v. York County Directors of the Poor,* 284 Pa. 138. In *O'Malley v. Olyphant Boro.,* supra, a sewer was constructed under a borough ordinance providing that the entire cost thereof should be paid out of the proceeds of assessments against properties benefited. In the viewers' proceedings held after the sewer was completed a part of the cost was assessed against the borough, which already had a debt in excess of the constitutional limit. An injunction was granted forbidding the borough officials from making further payments to the contractors. We said, at page 533, "To their [the contractors'] allegation that they had no way of ascertaining the indebtedness of the borough, the answer is that it was their duty to ascertain it in some way, or to refuse to enter into the contract until the borough officials had satisfied them that the proposed additional indebtedness would be with-

in the constitutional limit. Without taking this precaution, they acted at their peril." This rule applies in full force to the facts of the instant case.

Plaintiff urges that the defendant city is now estopped to deny the validity of the contracts entered into by the borough council. It asserts that after annexation the city approved and ratified the contracts, and assumed liability upon the certificates issued thereunder by carrying forward the viewers' proceedings already begun, by instituting additional viewers' proceedings upon the other completed projects, by collecting the benefits which were assessed, and by making payment out of the sums collected upon certain of the certificates of indebtedness issued by the borough to the contractors. While these facts are very persuasive, and indicate that perhaps the city did not at first take the position that the contracts were void, they cannot be held to bar the city from now raising a defense otherwise valid. The work and materials for which the certificates were given had all been furnished prior to annexation. The resulting street improvements could not be returned, and the city had no option but to accept the benefit thereof. It is certainly not to be held against the city that it carried on viewers' proceedings, instituted new ones, and applied the benefits received upon the viewers' awards to the payment of the certificates issued to the contractors. These steps inured solely to the benefit of the plaintiff and other certificate holders, and cannot be construed as recognition of the validity of the contracts, so as to prejudice the city's rights in this action.

It is further asserted by plaintiff that the contracts and the certificates issued thereunder were within the councilmanic debt-incurring capacity. It relies upon the Act of April 11, 1929, P. L. 520, which provides that, before beginning a public improvement, municipal officials "shall have power to cause to be prepared preliminary estimates of *the amount of benefits* which may be assessed against the owners of such property and for

which liens may be legally filed under existing laws; and, in any proceedings for the incurring or increasing of indebtedness for the borrowing of moneys for the payment of the cost of such improvement, *such estimates of assessable benefits,* when signed and verified by the affidavit of the engineer that they are in his opinion fair estimates of the amounts of benefits which may be lawfully assessed, *shall be considered deductible assets"* in computing the municipal indebtedness. Plaintiff argues that here such estimates were supplied to the borough council before the contracts in question were entered into, and therefore the amounts of such estimated benefits should be deducted in computing the debt created by the improvements. According to plaintiff's calculations, the projects increased the councilmanic debt to the extent of $29,400 only, which plaintiff maintains was well within its capacity.

While it is true that each of the borough ordinances authorizing the improvements in question provided that the entire cost thereof should be assessed against and collected from the properties benefited, the estimates furnished by the borough engineer to the council before each contract was made were not in substantial compliance with the provisions of the statute. They contain only the engineer's calculations of the net expense to the borough of each of the improvements, without disclosing his estimates of the amount of the assessable benefits. This is the fundamental requirement of the statute, if advantage is to be taken by the borough of its provisions. As the result of the failure of the engineer to comply with the act, his estimates are without value for the purpose for which they were intended.

It does not follow that there can be no recovery upon the obligations represented by the certificates issued for completed work. As we have seen, the borough debt created by the contracts was not absolute, but was subject to reduction to the extent of the benefits subsequently to be assessed as the ordinances required. Not until

viewers' proceedings had been held could the real amount of the debt arising from the improvements be determined: *O'Malley v. Olyphant Boro.,* supra; *Redding v. Esplen Boro.,* 207 Pa. 248. However, as the projects were completed, such proceedings were immediately instituted. Even before annexation to the city, the borough officials by petition to the court caused viewers to be appointed for twelve of the projects, and within five months after annexation the defendant city obtained the appointment of viewers for the remaining six completed projects. The viewers, with the finished improvements before them, were able accurately to determine the amount by which properties affected had been benefited or damaged. The benefits fixed in the viewers' proceedings constituted a determination of the amount of the tax which was levied and for which liens could be filed against abutting properties by reason of the ordinances authorizing the improvements.[4] With the confirmation by the court of the viewers' reports the benefits therein assessed became available as assets deductible for the purpose of computing the councilmanic debt: *Schuldice v. Pittsburgh,* 251 Pa. 28; *Ward v. Pittsburgh,* supra. At the same time, of course, the amount of damages awarded in the viewers' proceedings to the owners of property injured by the improvements became an indebtedness of the borough.

In the light of these considerations we are of opinion that if, as a consequence of the reduction of the borough indebtedness by reason of the benefits assessed in the viewers' proceedings, it appears that the net obligation actually incurred by the borough, on account of an improvement here under consideration, did not in fact cause the councilmanic debt limit to be exceeded, pay-

---

[4] The final amounts of benefits and damages fixed in the viewers' proceedings are shown in detail in the summary on a following page of this opinion.

ment should be made for the value of the work done in connection with such improvement.

In applying these principles to the present case, we find from the exhibits set forth in the record that under the first three contracts, which were authorized on July 11, 1929, the borough council paid to the contractors the sum of $38,060.90 in cash, in addition to $10,000 of certificates of indebtedness here in suit. All the other expenses of the borough on account of these contracts were for engineering and inspection services which the court below found properly to be current expenses chargeable to current revenues of the borough, and hence not debt. The total indebtedness incurred by the borough under these contracts was $48,060.90. In the viewers' proceedings benefits of $40,462.66 were assessed against abutting properties, and damages awarded of $2,322.57, making the net benefits $38,140.09. The deduction of this sum from the cost of the improvements, under the contracts of July 11, 1929, leaves $9,920.81 as the net indebtedness incurred on account of these three projects. A similar computation may be applied to the other completed projects, as will appear by the following summary:

| Completed Projects Covered by Contracts of | Cost of Improvement Exclusive of Engineering and Inspection Charges | Damages Awarded to Owners of Abutting Property | Benefits Assessed Against Abutting Property | Net Cost of Improvements |
|---|---|---|---|---|
| July 11, 1929 . | $48,060.90 | $2,322.57 | $40,462.66 | $9,920.81 |
| Aug. 8, 1929 .. | 102,761.50 | 4,950.00 | 46,230.80 | 61,480.70 |
| Sept. 19, 1929 . | 42,776.52 | 1,500.00 | 27,315.50 | 16,961.02 |
| Oct. 17, 1929 .. | 9,035.65 | ........ | 8,036.00 | 999.65 |
| Nov. 9, 1929 .. | 14,217.35 | ........ | 9,901.78 | 4,315.57 |
| Totals ..... | $216,851.92 | $8,772.57 | $131,946.74 | $93,677.75 |

To the extent that payment for these improvements will not cause the councilmanic debt limit to be ex-

ceeded, having regard to the debt situation on the date the contracts for the work were made, the defendant city is bound on an implied assumpsit to pay for the fair value of the benefits received. It follows as a corollary that there is no obligation to pay for any benefits in excess of the constitutional capacity of the borough council.

As we have stated, the plaintiff in the present case is the holder of twenty certificates, issued upon fourteen of the twenty-four contracts. The recovery to which plaintiff is entitled depends upon the amount of the councilmanic borrowing capacity at the time the contracts were made, which remains for determination. In 1929 the assessed valuation of property in Overbrook was $4,190,600, providing a 2% constitutional debt limit of $83,812. The court in banc found that on July 11, 1929, before any of the contracts were made, the borough council had an unused borrowing capacity of $75,476. Our examination of the record, and study of the schedules appended to the briefs, convince us that this finding is sustained by the evidence, save in one particular. The court erred in treating certain outstanding bonds of the borough as a part of the councilmanic debt, when properly they should have been considered electoral debt.

In this connection it appears that in 1924 a bond issue of $80,000 was approved by the voters of Overbrook, and sold. One of the objects of this issue was the payment of $15,750 of current expense loans then outstanding. The court below held that this sum, although now represented by bonds issued by popular vote, was councilmanic debt, and that its nature was not changed by the refunding with the approval of the electorate. However the loans so refunded, being for current expenses and to be repaid out of current revenues, did not constitute debt in a constitutional sense: *Athens National Bank v. Ridgebury Twp.*, 303 Pa. 479; *Scranton Electric Co. v. Old Forge Boro.*, 309 Pa. 73; *Kelley v. Baldwin*, 319 Pa. 53. The situation is analogous to that where an in-

valid obligation—which being invalid is not debt—is funded by an electoral bond issue. In such case the obligation becomes valid as electoral debt, although it was originally incurred without a vote of the people: *Roye v. Columbia Boro.*, 192 Pa. 146; *Bell v. Waynesboro*, 195 Pa. 299; see *Rettinger v. Pittsburgh School Board*, supra. For this reason the $15,750 of bonds issued in 1924 should not have been considered a part of the councilmanic debt of the borough.

The same reasoning applies to a similar item of $8,-475 of current expense loans refunded by an electoral bond issue of 1927. Of course the amounts in the sinking funds of these two bond issues, which the court used as a credit against the councilmanic debt created by the bonds, must likewise be excluded from consideration, as it is clear that they also relate to the electoral debt of the borough. These changes increase the councilmanic borrowing capacity before the contracts were awarded by $8,670.38, with the following result:

| | |
|---|---|
| Unused borrowing capacity as found by the court below | $75,476.00 |
| Add: Net amount of bond issues erroneously charged to councilmanic debt | 8,670.38 |
| Total borrowing capacity of the borough on July 11, 1929 | $84,146.38 |

It therefore clearly appears that the borough council had a borrowing capacity in excess of the constitutional allowance of $83,812 to the extent of $334.38.

According to our calculations the councilmanic borrowing capacity of the borough, as determined above, is sufficient to permit payment of all the certificates of indebtedness issued under the contracts of July 11, 1929, and August 8, 1929, and a part of the certificates issued under the first two contracts of September 19, 1929. As we have stated, the plaintiff in this case is not the holder of all of the certificates of indebtedness which were issued by the borough. Our computations indicate that

plaintiff is entitled to recover upon $44,790.31 of the certificates here in suit,[5] with interest from the date that payment could be made thereon without exceeding the

---

[5] This result is reached as follows:

| | | |
|---|---:|---:|
| Total councilmanic borrowing capacity on July 11, 1929 .................................... | | $84,146.38 |
| Net indebtedness incurred under projects of 7/11/29 (Nos. 7-9) ........ | $9,920.81 | |
| Increase of indebtedness on account of miscellaneous items, 7/11—8/8/29 | 1,845.27 | |
| | | $11,766.08 |
| | | |
| Councilmanic borrowing capacity on August 8, 1929 . | | $72,380.30 |
| Net indebtedness incurred under projects of 8/8/29 (Nos. 10-19) ...... | $61,480.70 | |
| Increase of indebtedness on account of miscellaneous items, 8/8—9/19/29 | 808.47 | |
| | | $62,289.17 |
| | | |
| Councilmanic borrowing capacity on September 19, 1929 .................................... | | $10,091.13 |
| Amount paid contractor on project No. 20 of September 19, 1929 ...... | $19,440.00 | |
| Damages awarded .................. | None | |
| Deduct: Benefits assessed .......... | 9,614.00 | |
| | | $9,826.00 |
| | | |
| Balance of councilmanic borrowing capacity available for project No. 21 of September 19, 1929 ...... | | $265.13 |

The above permits recovery upon certificates here in suit, as follows:

| | |
|---|---:|
| Certificates issued on Project No. 7 ...... | $4,000.00 |
| Certificates issued on Project No. 8 ...... | 6,000.00 |
| Certificates issued on Project No. 14 ...... | 11,439.49 |
| Certificates issued on Project No. 17 ...... | 1,475.70 |
| Certificates issued on Project No. 18 ...... | 1,060.05 |
| Certificates issued on Project No. 19 ...... | 2,150.00 |
| Certificates issued on Project No. 20 ...... | 18,399.94 |
| Certificates issued on Project No. 21 ...... | 265.13 |
| Total ............................ | $44,790.31 |

councilmanic debt limit, i. e., the date of the confirmation by the court of the viewers' report upon the improvement in connection with which each certificate was given.

The judgment is reversed, and the record is remitted to the court below, with directions to enter judgment for the plaintiff and against the defendant in the amount of $44,790.31, with interest.

OPINION UPON PETITION FOR REARGUMENT BY MR. JUSTICE BARNES, January 30, 1939:

The appellant, City of Pittsburgh, in a petition for reargument urges that reconsideration be given the question whether certain tax anticipation certificates issued by the Borough of Overbrook in 1928 for current expenses, which remained unpaid in 1929, should be included in calculating the councilmanic indebtedness of the Borough for the 1929 year. These certificates were issued between April 14th and December 31, 1928, in the aggregate amount of $23,900. and the proceeds of the loans thereby represented were used to pay current expenses of the Borough incurred during the year 1928. We approved, in the opinion filed in this case, the action of the court below in excluding this item in determining the amount of the councilmanic debt in 1929. The issue involved in the case was whether certain paving contracts entered into by the Borough prior to its annexation to the City of Pittsburgh, caused its councilmanic borrowing power to be exceeded.

While the petition sets forth that appellant does not question the validity of these certificates and it is conceded that temporary loans payable out of current revenues do not diminish borrowing power for the year then current, it is contended that when such indebtedness remains unpaid and is carried over into a subsequent year, it should thereafter be treated as councilmanic debt. It is insisted that this principle should be followed in the present case, since the Borough diverted to other pur-

poses the taxes imposed to pay off this indebtedness, and made no provision in its 1929 budget to liquidate the item.

Appellant calls attention to the decision of this Court in *Penna. P. & L. Co. v. City of Bethlehem,* 323 Pa. 313, in support of its position. In that case it appears that the municipality in each year over a five-year period "budgeted 100% of its current taxes while the actual collection of taxes was below that amount, and at the end of each year it borrowed to pay for that year's operating expenses." We condemned such a method of financing current expenses of a municipality, or of meeting a deficit therein incurred, and held it to be "a mere subterfuge to evade the constitutional prohibition," limiting the amount that may be borrowed without a vote of the electors to two per centum of the assessed valuation of its taxable property.

In the present case, the record clearly indicates that these loans were made by the Borough officials with the bona fide intention of making repayment of them in 1928 out of current revenues reasonably expected to be sufficient for that purpose. There is nothing to indicate an attempt at evasion of the law, *particularly since the outstanding uncollected taxes for the year 1928 were at all times in excess of the borrowings for that year.* In other words, there was a substantial margin of delinquent taxes for 1928 over the total of outstanding current expense loans.

It has been consistently held by this Court that if such loans do not overreach current revenues and do not extend beyond the present means of payment possessed by the municipality, then no debt is created in a constitutional sense. See *Erie's Appeal,* 91 Pa. 398; *Georges Twp. v. Union Tr. Co.,* 293 Pa. 364; *Athens Nat. Bank v. Ridgebury Twp.,* 303 Pa. 479; *Scranton Elec. Co. v. Old Forge Boro.,* 309 Pa. 73; see also *Kelley v. Baldwin,* 319 Pa. 53. Of course, the taxes pledged for the payment of such loans cannot be used again as an asset in

computing the municipal debt. See *Ward v. Pittsburgh,* 321 Pa. 414. However, it appears from the record that this was not done in the present case, as the credit allowed for delinquent taxes for 1928 was for such taxes not pledged for current expense loans.

For these reasons we are of opinion that the present case is clearly distinguishable upon its facts from the situation before us in *Penna. P. & L. Co. v. City of Bethlehem,* supra, and it was not error for the court below to exclude the item of $23,900 in the computation of the Borough's councilmanic debt in 1929. Other reasons set forth in the petition as grounds for the granting of a reargument are without merit.

The petition is refused.