**Dean v. Township of Bensalem**

*James J. Auchinleck, Jr.*, for plaintiff.
*Henry F. Hughes*, for defendant.

BIESTER, Jr. *J.*, February 24, 1983—This assumpsit was tried before a jury which found in favor of plaintiff and awarded him damages in the amount of $48,000. Defendant filed timely motions for judgment n.o.v. and new trial both of which were argued before the above panel of judges and those motions are all denied.

Plaintiff's case arose out of services rendered by plaintiff and his firm as solicitor to defendant township from 1962 until January 1974. One of the significant difficulties in the case arises out of the failure of plaintiff or his firm to engage in a timely billing process. Frequently billings were not made until years after the services had been rendered and only in rare instances were interim billings submitted. This failure to make timely billing created one of the most serious problems in the case. Obviously the most significant of those problems is the impact vel non of the statute of limitations.

The statute problem in turn devolved into the issue of whether the relationship between plaintiff and defendant was in the nature of a continuing professional relationship or whether it was a relationship on a severable and annual basis. Further complicating that question was the fact that the minutes reflect that plaintiff was appointed as solicitor in each succeeding January reorganization meeting occurring from 1962 through 1971. However, no reappointment occurred in 1972 and no reappointment occurred in 1973 although plaintiff continued to serve as solicitor throughout 1971, 1972 and 1973. The trial judge entered a directed verdict in favor of defendant and against plaintiff with respect to all maters between 1962 through 1970. The trial judge determined that there was not sufficient evidence that the relationship was in the nature of an entire or continuing contract during

that period of time. The trial judge did give to the jury the question whether the hiring in January of 1971 created a continuing relationship or a year by year relationship through all of 1971, 1972 and 1973. The circumstances of this case clearly demonstrate that a solicitor retained by a municipality should present the municipality with timely billings and in fact interim billings in protracted matters so that the municipality may be fairly apprised of its obligations in a timely fashion.

Defendant township urges judgment n.o.v. on two interrelated bases. First, the township urges that plaintiff failed to prove the contract alleged in the original complaint, and, secondly, that the trial judge improperly presented to the jury the determination of the character of the relationship between plaintiff and defendant from January 1971, defendant urging the statute of limitations defeated that claim from 1971 through 1973.

We should point out at this time that the complaint in this matter was not filed until June 22, 1979. Since the jury could find that there was a continuing relationship from June 22, 1973 back through January of 1971, the court determined that the whole period between January 1971 through 1973 could be found to be clear of the impact of the Statute.

The standard for judgment n.o.v. has been clearly set out by the Supreme Court in Atkins v. Urban Redevelopment Authority of Pittsburgh, 489 Pa. 344, 351, 414 A. 2d 100, 103 (1980):

"Our standard for review is settled. A judgment n.o.v. should be entered only in a clear case, and any doubts should be resolved in favor of the verdict. Stewart v. Chernicky, 439 Pa. 43, 266 A. 2d 259 (1970). In considering a motion for judgment

n.o.v., the evidence, together with all reasonable inferences therefrom, is considered in the light most favorable to the verdict winner. Miller v. Checker Yellow Cab Co., 465 Pa. 82, 348 A. 2d 128 (1975)."

The trial judge's instructions to the jury on the matter of the statute of limitations issue was as follows:

"Now, the next question that you have to consider is related to the matter of the statute of limitations. I'm not going to go through a long discussion of the statute of limitations. You've heard enough already about enough complicated subjects. I'm not going to take you all the way through that. Suffice it to say that the statute of limitations precludes a Plaintiff from successfully recovering for matters which—on which the cause of action, we say, accrued, when the cause of action accrued prior to a certain time. In this case the queston that has to be decided is when that point of time occurs.

If a claim is made for a matter as to which the work was done and completed and was ready for billing within a certain period of time, then it may not be within the statute of limitations. There's no statute problem. If it was older than a particular period of time, it could or would be a statute of limitations problem. I have tried to refine that question down to a certain proposition to you.

The first question that has to be confronted is: Was this contract a series of individual contracts—and it will be for you to determine whether a contract took place or contracts took place. I'm making this assumption for the purpose of this discussion. Was it a series of individual contracts; or was it a continuing, entire contract?

Certain consequences flow from one decision or the other.

I have, upon my review of all of the evidence in the case, determined that with respect to the arrangements or contracts made between 1962 and January of 1971 that because the evidence on both sides indicates that there were annual appointments, that there is not sufficient evidence or not a sufficient issue to require you to decide whether they were individual contracts. And those are matters which you shall not concern yourselves with in terms of payment. They are, therefore, outside the statute of limitations. That doesn't mean that you do not look at them for other purposes. They may be very helpful or unhelpful, I don't know, in terms of your view of the whole case. But in terms of recovery on those matters, any matter which was ready for billing prior to January of 1971—and it will be for you to determine whether a matter was ready for billing prior to that time, based on all that you've heard and based on all the exhibits which will go out with you—then that matter is a matter as to which there cannot be recovery.

I'll repeat that so it's very clear to everybody. If you find that a matter was ready for billing prior to January 4th, or whenever the reorganization meeting was, in 1971, then that matter there's no recovery on. It's not recoverable, because of the impact of the statute of limitations. And I've taken that from your decision-making process, or because I find no evidence warranting, indicating or demonstrating an issue which requires your decision on that.

Now, if you find that the contract—first of all, if you find that Mr. Dean was reappointed in January of 1971 as Solicitor, and if you find that there was no

further consideration of Mr. Dean's appointment thereafter—and you'll have the minutes to review all of those meetings—then the question occurs whether that was a continuous contract running until January of 1974, or whether it was an individual, separable year-by-year contract.

If you find that, in fact, it was a separable year-by-year contract, not one continuing contract, then you would not concern yourselves with matters that were ready for billing before January of 1973. If you find, on the other hand, that the appointment and the fee arrangement constituted a continuous contract as of January, 1971, then matters which were ready for billing after January, 1971, you could consider. They are not excluded by the statute of limitations.

Now, let me run through it one more time so we're clear on this one. The key here is continuous contract or separable contract. And the key dates are January, '71; January, '73. If you find, as I have explained to you in accordance with the standards I've explained, that there was a contract arising out of the circumstances of the meeting of January, 1971, you then have to consider what character of contract that was. If it was a continuing contract, one continuous contract that carried on until January of 1974, then you may consider all matters which were ready for billing after January, 1971. That becomes your cut-off date or your bring-in date, depending on which way you want to look at it.

If, however, you find that the arrangement which occurred as a result of the appointment in 1971 was a year-by-year contract, not a continuous contract, then your cut-off date is January of 1973."

Clearly under all the evidence in the case the jury

was warranted in its finding that the contract of January 1971 was a continuing and entire contract through 1971, 1972 and 1973. We should also refer to the precise language of the section which authorizes the election of a solicitor for a municipality such as the Township of Bensalem and it may be found in the Second Class Township Code as follows:

"The board of supervisors, on the first Monday of January in any year, or as soon thereafter as practicable, may elect, by a vote of the majority of members, and fix the compensation of one person learned in the law, who shall be styled the township solicitor. In lieu of the appointment of one person, the board of supervisors may appoint a law firm, partnership, association or professional corporation, which shall act as the township solicitor." Act of July 10, 1947, P.L. 1481 §7, 53 P.S. 65580. As amended 1967, Oct. 19, P.L. 456, No. 217 §1; 1974, Dec. 13, P.L. 960, No. 315 §2.

The entry in Purdon's Statutes contains the following historical note:

"The 1947 Amendatory act omitted a provision fixing a term of one year."

The Superior Court in the case of Thorpe v. Schoenbrun, 202 Pa. Super. 375 (1963); 195 A. 2d 870 (1963) clearly delineated and confirmed the distinction between an entire or continuing contract and severable or separate contracts with respect to the impact of the Statute of Limitations. The Superior Court in Thorpe, adopted the following two paragraphs from 22 P.L.E. Limitation of Actions, §56:

"In general, the statute of limitations does not run against a contractual cause of action which is a

continuing one. On a continuing contract which is entire, the statute of limitations begins to run only from the time when the breach occurs or the contract is in some way terminated. The test of continuity, so as to take the case out of the operation of the statute of limitations, is to be determined by the answer to the question whether the services were performed under one continuous contract, whether express or implied, with no definite time fixed for payment, or were rendered under several separate contracts."

If services are rendered under an agreement which does not fix any certain time for payment or for the termination of the services, the contract will be treated as continuous, and the statute of limitations does not begin to run until the termination of the contractual relationship between the parties." At p. 378.

It should be noted also that the trial court in Thorpe gave to the jury the factual question of whether the contract was severable or continuing.

In the instant case the court's instructions to the jury were appropriate and the jury's finding was based on credible evidence and defendant is not entitled to judgment n.o.v. with respect to the issue of statute of limitations as it finally went to the jury.

The trial judge granted plaintiff's motion to amend his original complaint to conform with the evidence presented. The original complaint alleged a single contract at a particular hourly rate continuing from the time of the first appointment of Mr. Dean as solicitor through all of those years into January of 1974. Inasmuch as the evidence presented to the jury demonstrated that Mr. Dean was started at a lower rate than pleaded and was reappointed by a specific resolution at each one of the

annual reorganization meetings commencing with January 1963 through January of 1971, the court permitted an amendment of the pleadings to conform to that proof. Defendant objected to that amendment and defendant's second basis for its motion for judgment n.o.v. is that plaintiff did not prove what was alleged in the original complaint. Without pursuing this matter extensively we simply point out that the rule authorizing such amendments specifically provides:

"An amendment may be made to conform to the evidence offered and admitted." 42 Pa.C.S.A. § 1033 and our Superior Court has held that "the motion should be granted unless error of law or prejudice to an adverse party would result," Cingota v. Milligan, 286 Pa. Super. 117, 122; 428 A. 2d 600 (1981). It is difficult to find any prejudice which occurred in this matter inasmuch as the court granted a directed verdict to defendant with respect to all of the years prior to 1971 so that the impact of modification to show individuated contracts on each of those years did not provide a great deal of help and support to plaintiff. For the time after January 1971 the court left to the jury the question of whether the contracts were severable or whether it was a continuing contract. Under all the circumstances therefore no prejudice occurred to defendant and in any event any modification which did occur to the pleadings did not create a different cause of action such as to warrnat judgment n.o.v.

Before leaving this point we note that defendant has raised as one of its bases for new trial an assertion that defense counsel was not allowed to argue to the jury that plaintiff had not demonstrated what had been alleged in the original complaint. We refer to the following colloquy which occurred in the absence of the jury. The colloquy occurred as follows:

"Mr. Huhn: Can we argue to the jury that Mr. Dean—if the jury finds that there was no contract on the first Monday of January of 1962 for $50 an hour, and that Mr. Dean was to be the Solicitor forever and a day until dismissed, that Mr. Dean had failed to make out his case?

The Court: I should think you could not. All right. The motion is granted."

Clearly defense counsel sought to argue that Mr. Dean had "failed to make out his case" and was not seeking to make that argument to challenge the credibility of Mr. Dean or other plaintiff witnesses by pointing out the distinction between the allegation of the complaint and the actual evidence established. Inasmuch as the court had ruled that the amendment to conform would be permitted, the argument which the defense counsel sought to make would have been totally inappropriate.

Defendant as we have noted also has moved for a new trial and bases that motion upon several alleged errors in the actions of the trial judge. We will address these in the order in which they are raised.

First, defendant argues that the trial judge ought to have granted a motion for a mistrial when plaintiff's attorney made reference in the course of a question to the Republican Party of Bensalem Township. The entire matter occurred as follows;

"Mr. Auchinleck: In township matters, did you take direction from the Chairman of the Republican Party in the Township?

Mr. Huhn: I object, Your Honor, and now would raise the issue—

Mr. Auchinleck: I meant Chairman of the Board of Supervisors.

Mr. Huhn: I object, as prejudicial. I now move for a mistrial.

The Court: Motion is overruled.

Mr. Auchinleck: The question?

The Court: The question I would have preferred not be asked in that fashion.

Mr. Auchinleck: I'm sorry, Your Honor. I meant the Chairman of the Board of Supervisors.

Mr. Huhn: I object now. It's even worse.

The Court: It's not necessarily better or worse, Mr. Huhn. I'm going to be dealing—I have put you on notice, Mr. Auchinleck.

Mr. Auchinleck: I'll withdraw the question, Your Honor.

The Court: No. No. That I will deal with each question as it comes. Now, as to this question, it's already on the table. Do you wish me to ask the jury to disregard? Or do you wish to pursue it?

Mr. Auchinleck: The question hasn't been answered yet. I'll withdraw the question.

The Court: Then the jury will disregard that question.

Do you wish precautionary [sic] instructions?

Mr. Huhn: Yes, and also on the—on his attempt to cure it, Your Honor, the jury disregard that.

The Court: All right. Disregard all of that particular line.

Members of the jury, throughout this trial it has been obvious, I'm sure, that a township like Bensalem obviously has its township government affected by politics, partisan politics. So far as that may be relevant to you in a particular—in evaluation of a particular witness, all right. What I have tried to do, and we had so far, I thought successfully done, is to not identify a particular political persuasion of any of the parties involved here, witnesses or litigants.

I do direct you to strike from your consideration any reference to the political party or persuasion of anyone, because that may tend to create some bias

in your own mind. Don't permit it to do so. Don't permit any association that you might have or feelings you might have one way or the other with respect to any of the political parties to have any effect on your consideration of this case. I take it that the question was inadvertently phrased. And for that reason, we will proceed."

The court was satisfied at trial that the matter was inadvertent and in any event not so flagrant a point as to require, let alone warrant, a mistrial and the cautionary instructions given were quite adequate to the issue.

We have already addressed defendant's second basis for new trial, i.e., that the trial judge improperly granted plaintiff's motion to amend the pleadings to conform to the evidence and we have also already dealt with the matter of the statute of limitations as it applies to those circumstances.

The next alleged basis for new trial refers to the matter of defense counsel's request to argue to the jury that plaintiff had not proved the existence of the original contract pleaded in the original complaint. We have already dealt with this matter earlier.

Defendant also urges that the trial judge erred in not affirming points two through six of defendant's points for charge. Defendant's proposed points two through six are as follows:

"2. That the plaintiff has admitted submitting a false document so as to deceive the public is to be considered in resolving questions as to plaintiff's credibility.

3. No legislative body or municipal board having legislative authority can take action which will bind its successors. It cannot enter into a contract which will extend beyond the term for which the

members of the body were elected. Mitchell v. Chester Housing Authority, 389 Pa. 314, 132 A. 2d 873 (1957).

4. A person contracting with a municipality must at his peril inquire into the power of the municipality of its officers to make the contract or incur the debt. Pittsburgh Paving Co. v. City of Pittsburgh, 332 Pa. 563, 3 A. 2d 905 (1938).

5. In pleading a claim based on an hourly rate, a plaintiff's bill for services rendered to a municipality must show the hours allegedly worked.

6. A solicitor is required by law to be appointed annually, therefore a solicitor's contract within a Second Class Township is for one (1) year, each appointment in any succeeding year constitutes a separate contract of employment."

With respect to Point two we note that the court charged extensively concerning the evaluation of witnesses and the court covered the matter of the credibility and evaluation of witnesses as it wished to do, and with respect to such matters we believe that granting or denying a specific point is very much within the discretion of the trial judge, McGowan v. Devonshire Hall Apartments, 278 Pa. Super. 229, 420 A. 2d 514 (1980). Point three amounts to a misstatement of the laws as it bears upon the circumstances of this case and would have been confusing to the jury. Subsequent boards were not bound by any of the contracts entered into inasmuch as the only contract which was revelant to the ultimate determination of the jury was the hiring of January 1971 and that hiring was obviously at will and could be terminated at any time by a majority of the board of supervisors.

Point four suffers from the same disability and refusing that point was under all the circumstances of the case quite proper. Defense counsel offered no

authority in support of Point five and under all the circumstances its refusal was quite appropriate. Point six is contrary to the law under the Second Class Township Code provision as we have earlier referred to it.

Defendant next urges a new trial on the basis that the trial judge should have charged the jury that the law requires plaintiff's rate of compensation be made part of the minutes of the township in order for that employment contract to be enforceable. While there is no question that the arrangement ought to be made part of the public record and suitably enshrined in the records of the township, we find that the setting of the rate is not specifically required to be in the minutes in order for the solicitor to be compensated. We agree with the reasoning of the able opinion of Judge Lowe in the case of DeAngelis v. Horsham Township Sewer Authority, 92 Montg. L. R. 1 (1969). On facts quite similar to the case at bar the court refused to deny recovery to plaintiff solicitor:

"The defendant authority seeks to abrogate its financial responsibility because the secretary of the authority failed to record the precise agreement with the solicitor. The authority thereby adopts an unconscionable posture, and it offends this court's sense of justice." Id. at p. 4.

We cannot find that a lack of proper recording can act as a bar to an attempt by this plaintiff to prove the existence of a contract. We note that defendant did not attempt to argue that plaintiff did no work for defendant.

The next basis for a new trial is defendant's assertion that it was error to submit the statute of limitations issue to the jury in the form in which it was done and we have already dealt with that matter.

Defendant next bases its motion for a new trial on the fact that plaintiff's trial attorney was during the time of trial a partner of plaintiff's principal witness, Mr. McCoy. Defendant has correctly quoted the Code of Professional Responsibility's Canon 5 DR 101B which provides as follows:

"(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

We believe that under all the circumstances of this case Mr. Auchinleck was not required to be disqualified from appearing in the matter because Mr. McCoy was a principal witness in plaintiff's case. In one sense one might find that this matter was really one in which the attorneys were appearing pro se. We also realize that under all the circumstances of this case refusal to permit the continuing appearance of Mr. Auchinleck would work a substantial hardship on plaintiff because of the distinctive value of the lawyer or his firm as

counsel in the particular case. While we believe it would have been better practice for plaintiff not to sue "pro se" and that the services of outside counsel should have been retained, we do recognize that in light of the complexity of the case and the difficulty in preparation, that it could potentially work a very substantial hardship on plaintiff were plaintiff required to obtain those services.

We have been referred to no specific authority in Pennsylvania with respect to this matter. We have reviewed the case of Spilky v. Hirsch, 423 N.Y.S. 2d, 934; 102 Misc. 2d 536 (1980) in which a similar issue was raised. There, as here, the appearance was essentially pro se and the court held that the appearance by one of the attorneys on behalf of the firm coupled with the testimony of another attorney with respect to the value of services did not require disqualification. There, as here, the suit was an action for services rendered by plaintiff attorneys. The court held that disqualification was not required. The court pointed out the right of attorneys to represent themselves in proceedings to collect fees. The court also regarded the matter as within exception three which permits the coupling of appearance and testimony if the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client. While we would give a more narrow reading to that section and believe that most properly it is designed to cover a situation in which the value of services may be an adjunct issue in a larger proceeding, one can read the exception as the New York Court did to apply to the instant case if one gives it a broad and liberal reading.

We are persuaded that under all the circumstances of the case the disqualification of Mr. Auchinleck on the basis that Mr. McCoy was a prin-

cipal witness for plaintiff is not required and the trial court did not err in refusing to order such disqualification. We reiterate that we believe the better practice in these matters is for the attorney seeking the fee to obtain the services of independent counsel.

The several motions for judgment n.o.v. and new trial having been duly considered those motions are all denied and we therefore enter the following

## ORDER

And now, February 24, 1983, defendant Township of Bensalem's motion for judgment n.o.v. and for new trial and denied.