416 A.2d 468

Thomas R. SNELL, D.D.S., Charles M. Hughes, D.D.S., Daniel K. Lovette, D.D.S., Appellants,

v.

COMMONWEALTH of Pennsylvania, STATE EXAMINING BOARD.

Supreme Court of Pennsylvania.

Argued May 20, 1980.

Decided July 3, 1980.

James W. Reynolds, David A. Wion, Harrisburg, for appellants.

William J. Wheeler, William H. Andring, Jr., Asst. Atty. Gen., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellants Dr. Thomas R. Snell, Dr. Charles M. Hughes, and Dr. Daniel K. Lovette challenge the order of the Commonwealth Court upholding the State Dental Council and Examining Board's suspension of their licenses. Appellants contend that insufficient evidence appears of record to support a finding of knowledge or intent to defraud Pennsylvania Blue Shield by submission of false claims. We agree with appellants and reverse the order of the Commonwealth Court.[1]

From 1969 through 1971, appellants practiced oral surgery as salaried employees of the Miller Clinic in Harrisburg, Pennsylvania. The Clinic, owned solely by Dr. Richard Miller, provided oral surgery care to patients referred by general practitioners in that area. Many of the Clinic's patients were covered by Pennsylvania Blue Shield dental insurance policies. Thus, the Clinic received reimbursements from Blue Shield for such services. Appellants, as salaried

1. This case was reassigned to the writer on June 25, 1980.

employees, were not directly affected financially by the amount of reimbursement the Clinic received.

Because the Clinic received reimbursements in excess of $10,000 for the years 1969, 1970, and 1971, Blue Shield reviewed Clinic records to determine the accuracy of the claims presented. Of approximately 30,000 claims submitted by the Clinic during this three year period, investigation of four hundred files disclosed only twelve possible false claims. Blue Shield contacted the referring dentists and obtained their "bite wing" x-rays, taken of the twelve patients prior to surgery at the Clinic. From these x-rays, Blue Shield concluded that appellants performed surgical removal of erupted teeth and then submitted claims to Blue Shield for removal of impacted teeth. Surgical removal of impacted, but not erupted, teeth was covered under the dental insurance plans.[2]

As a result of these allegations, the State Dental Council and Examining Board cited appellants for violations of section 3(i) of the Dental Law.[3] After a hearing on the allegations, the Dental Council found that false claims had been filed and thus, that appellants had fraudulently or unlawfully practiced prohibited conduct under the statute.[4]

2. "Oral Surgical Services consisting of cutting procedures for the treatment of diseases and injuries of the jaw or any structure contiguous to the jaw, the treatment of fractures and the dislocations of the jaw or any facial bone, and the extraction of impacted teeth when partially or totally covered by bone [are compensable]."
Pennsylvania Blue Shield, Medical-Surgical Agreement, Article IIB.

3. Section 3(i) reads:
"The State Dental Council and Examining Board . . . shall have power: . . . (i) To suspend and revoke by majority action of the entire board the license or registration of any licensee who has been guilty of a crime or misdemeanor involving moral turpitude; or of a violation of any of the provisions of this act; or of fraudulent or unlawful practices, or fraudulent, misleading or deceptive representations; or of unprofessional conduct, detrimental or dangerous to the public health, safety, morals or welfare . . . . ."

4. In addition to Drs. Miller, Snell, Hughes and Lovette, a Dr. Carl Brothers was similarly cited for one instance of submitting a false claim. The Dental Council concluded, however, that Dr. Brothers did not violate section 3(i).

The Dental Council suspended Dr. Miller from practice for a period of six months. Appellants were suspended for three months. On appeal, the Commonwealth Court reversed the Dental Council's order suspending Dr. Miller from practice, but affirmed the suspension of appellants. By allowance, this appeal followed.[5]

■ The Commonwealth Court recognized that "[w]hile [Dr. Miller] may have benefited from the fruits of the fraud, unless he knew of it and participated in it, he cannot be guilty of fraudulent or unlawful practices or fraudulent misleading or deceptive representations." So too, we believe this analysis is equally applicable to appellants' case. The Commonwealth Court found no evidence that Dr. Miller ever signed any of the claim forms submitted to Blue Shield. For that reason, the court determined that Dr. Miller lacked knowledge of the fraudulent practice. Likewise, it must be concluded that there is insufficient evidence of appellants' knowledge of fraudulent practices. Although appellants' "signatures" do appear on these twelve claim forms, those "signatures" were affixed only by rubber stamp. Actual knowledge of wrongdoing or intent to defraud cannot be presumed on this basis.

Commonwealth evidence that these claims were false consisted of "bite wing" x-rays taken by the referring dentists. With respect to the degree of impaction, testimony of Commonwealth witnesses discloses that "bite wing" x-rays do not afford the treating surgeon sufficient information to diagnose properly.[6] Thus, the sole evidence in support of the Commonwealth's allegation that appellants actually removed erupted, rather than impacted teeth, consists of x-

5. The Commonwealth filed a petition for allowance of appeal challenging the Commonwealth Court's disposition of Dr. Miller's case. This petition was denied.

6. The Clinic used panorex (full mouth) x-rays in the diagnosis and treatment of patients. Clinic x-rays are not available, however, as they were destroyed by the 1972 Harrisburg flood.

rays which incompletely depict the area treated by the Clinic surgeons.[7]

▮ Unlike the Commonwealth Court, we believe this evidence does not support the contention that appellants knowingly completed and submitted false claims. It must be remembered that a license suspension proceeding is penal in nature, *Schireson v. Shafer*, 354 Pa. 458, 47 A.2d 665 (1946). Moreover, fraud or intent to defraud is never presumed, and must be proved by "evidence that is clear, precise and convincing." *Carlson v. Sherwood*, 416 Pa. 286, 287, 206 A.2d 19, 20 (1965); *Gerfin v. Colonial Smelting & Refining Co.*, 374 Pa. 66, 97 A.2d 71 (1953). On the evidence introduced by the Commonwealth at the license suspension hearing, it cannot be concluded that appellants intended to defraud Blue Shield.

Accordingly, we reverse the order of the Commonwealth Court affirming the order of the Board which suspended appellants' licenses.

EAGEN, C. J., concurs in the result.

---

7. Dr. Lovette treated one of the twelve patients, Peggy Fisher, on January 12, 1971. At the hearing, the Commonwealth produced x-rays taken on May 11, 1971 to show an absence of impacted teeth. Given that the May 11 x-rays followed Dr. Lovette's surgical removal of the patient's impacted teeth, it is hardly surprising that the x-rays showed no impactions.