**In re Ivan R. BERRINGER and Lois N. Berringer, Debtors.**

**James R. HUFF, Esquire, Trustee for the Bankruptcy Estate of Ivan R. Berringer and Lois N. Berringer, Plaintiffs,**

v.

**NATIONWIDE INSURANCE COMPANY, Defendant.**

**Bankruptcy No. 88–0283–BM.
Adv. No. 88–0402–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 29, 1991.

James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., for plaintiff/trustee.

Gilbert E. Caroff, Johnstown, Pa., for defendant/Nationwide Ins. Co.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff James R. Huff, Chapter 7 trustee ("trustee") of the bankruptcy estate of debtors Ivan R. Berringer and Lois N. Berringer, has brought an action for fraudulent misrepresentation against defendant Nationwide Insurance Company ("Nationwide").

The trustee alleges that Nationwide knowingly made false representations to Ivan Berringer ("Mr. Berringer") concerning his right and the right of Nationwide Credit Union ("Credit Union") to certain compensation and that Mr. Berringer justifiably relied to his detriment upon those representations. The trustee seeks to recover $34,599.74 in funds Nationwide remitted to Credit Union plus interest at the statutory rate from December 6, 1982.

Nationwide denies that it made any false representations to Mr. Berringer; denies that Mr. Berringer justifiably relied on any false representations it might have made; and denies that Mr. Berringer suffered any cognizable injury as a result of such reliance.

For the reasons hereinafter advanced, judgment will be entered in favor of the trustee and against Nationwide in the amount of $34,599.74 plus interest at the statutory rate of six percent *per annum* from December 6, 1982.

### I

### FACTS

Mr. Berringer became an agent for Nationwide on September 11, 1971. He was authorized to sell insurance products of Nationwide as an independent contractor.

Debtors borrowed $30,000.00 from Credit Union on December 19, 1978. They executed a promissory note at that time in the amount of $49,973.60.

Debtors also borrowed $7,200.00 from Credit Union on July 13, 1979. They exe-

cuted a promissory note at that time in the amount of $9,349.20.

On September 30, 1980, Mr. Berringer renewed his relationship with Nationwide and executed a document identified as "Agent's Agreement".

Paragraph 11.d of the Agent's Agreement provided that payment of Extended Earnings and Deferred Compensation Incentive Credits ("DCIC") to Mr. Berringer would commence sixty (60) days after cancellation of said Agent's Agreement and would be made over a period of three (3) years.

Paragraph 18 of the Agent's Agreement provided as follows:

*Assignment of Agreement.* The Companies rely upon your particular personal abilities in carrying out your obligations under this Agreement, therefore, no assignment of your rights, responsibilities, or any sums due you under this Agreement shall be made without prior written consent signed by an officer of the Companies.

Paragraph 21 of the Agent's Agreement provided as follows:

*Legal Action Under This Agreement.* It is agreed that no action, suit, proceeding at law or in equity shall be brought under this contract unless it is commenced and process is served within three years after the cause of action for which suit is brought ...

On November 13, 1980, debtors borrowed another $7,500.00 from Credit Union. They executed a promissory note at that time in the amount of $11,120.76. In connection with this loan, Mr. Berringer also executed at that time a document entitled "PAYROLL OR COMMISSION DEDUCTION AUTHORIZATION FOR LOAN REPAYMENT ONLY". Said document provided in pertinent part as follows:

I hereby authorize you to make deduction from my ... Commissions and other amounts due me as outlined below, and deposit same currently to the account of NATIONWIDE CREDIT UNION, until further notice, or in any event not to exceed in the aggregate THE SUM OF ————— ....

This authorization shall include also all wages, commissions, and any other moneys becoming due me upon, or at any time after, the termination of my ... AGENT'S AGREEMENT, but only to the extent of my indebtedness to the credit union.

Mr. Berringer resigned as an agent of Nationwide on July 6, 1982. His resignation was accepted by Nationwide as of that date.

As of the date of his resignation, Mr. Berringer had due and owing to him, as deferred compensation, two types of "security compensation":

1. Extended Earnings in the amount of $50,842.00; and

2. Deferred Compensation Incentive Credits in the amount of $28,128.54 if paid to him on his sixtieth birthday—i.e., on December 1, 1990—or in the amount of $17,239.88 if paid to him as of July 6, 1982.

Also as of the date of his resignation, Credit Union held four (4) claims against Mr. Berringer:

1. $22,885.25 due on the promissory note executed on December 19, 1978;

2. $3,258.00 due on the promissory note executed on July 13, 1979;

3. $6,362.98 due on the promissory note executed on November 13, 1980; and

4. $1,663.79 due on a VISA credit line account.

Mr. Berringer contacted Edwin M. Allegar, Nationwide's Regional Sales Manager, on several occasions between July 6, 1982 and September 10, 1982 concerning the amount of Security Compensation owing to him and the manner in which it would be paid to him.

Allegar sent the following letter to Mr. Berringer on September 10, 1982:

In response to your phone call to me the other day, I checked with Home Office regarding your Security Compensation payment. At this point, they are having some difficulty ascertaining who has priorities on these payments.

1. You gave a voluntary assignment to the Credit Union for reimbursement of their monies, which has priority.
2. We have two levies from the Internal Revenue Service which must be satisfied.
3. I am under the impression that you may need to consider other assignments to the insurance companies and Heritage Securities.

These are the priorities as of this date. There is the possibility, also, that other entities could make claim against your assets.

Very shortly you will receive an accounting of the Security Compensation amount credited to you. However, for the reasons cited above, you will not receive your first check until these matters are satisfied.

We will be back in touch with you just as soon as additional information is available.

A copy of this letter was sent to Robert Parsons, associate counsel to Nationwide.

On October 19, 1982, Parsons sent the following letter to Mr. Berringer:

We regret the delay in contacting you, but there are many parties interested in satisfying outstanding debts from your deferred compensation. There is money owing to the regional office ($1,439.00), Nationwide Credit Union ($32,776.23), the United States Internal Revenue Service ($16,515.24), Nationwide CU Visa ($1,823.51) and Heritage Securities ($4,098.48). The total indebtedness is $56,652.46, assuming that there are no additional premiums due the region.

You have extended earnings of $50,-842.00 and Deferred Compensation Credits of $28,128.54 at age 60 or December 1, 1990.

The present debt cannot be satisfied out of the Extended Earnings which leaves you with two alternatives. First, if you could persuade one of your debtors (sic) to wait until December 1, 1990 they could be satisfied from your DCIC. Secondly, you could elect to take the present dollar value of your DCIC and satisfy the total debt and receive the balance as you have

elected. There is a third alternative. You could pay the difference of $5,810.46 and leave your DCIC alone. In case you elect the second alternative, I have enclosed a form which you must complete. Please see Ed Allegar to help you with this form.

Please let met know what you would prefer to do.

On October 28, 1982, Mr. Berringer elected to have his Security Compensation paid to him as follows:

1. Extended Earnings of $50,842.00 payable in three (3) equal annual installments; and
2. Deferred Compensation Incentive Credits discounted to present value of $17,239.98 as of July 6, 1982 payable in three (3) equal annual installments.

On December 6, 1982, Nationwide remitted $34,599.74 of Mr. Berringer's Security Compensation to Credit Union, which then applied it to its four claims against Mr. Berringer noted previously.

Debtors filed a voluntary chapter 7 petition in this court on February 4, 1988. James R. Huff, plaintiff in this action, was appointed chapter 7 trustee on February 25, 1988.

The above-captioned adversary action was commenced on September 12, 1988.

## II

### STATUTE OF LIMITATIONS

Nationwide contends that the present cause of action accrued in 1982 and therefore is barred by the three-year limitation provision in Paragraph 21 of the Agent's Agreement executed on September 30, 1980. Nationwide's contention is without merit.

This adversary has not been brought under the Agent's Agreement but rather as a tort action for fraudulent misrepresentation. Under Pennsylvania law, a claim for fraud which accrued between June 27, 1979 and February 18, 1983 is governed by the six-year statute of limitation at 42 Pa.C. S.A. § 5527(6) (Purdon's Supp.1981). *A.J. Cunningham Packing Co. v. Congress Fi-*

*nancial Corp.*, 792 F.2d 330, 333 (3rd Cir. 1986).

The statute of limitation for fraud begins to run from the time of the fraudulent acts complained of, unless the fraud has been actively concealed by the purported wrongdoer. *Turtzo v. Boyer*, 370 Pa. 526, 88 A.2d 884, 885 (1952). More precisely, it begins to run when the cause of action accrues, as determined by the final significant event necessary to make the claim suable. *Mack Trucks, Inc. v. Bendix–Westinghouse Automotive Air Brake Co.*, 372 F.2d 18, 20 (3rd Cir.1966) *cert. denied*, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967) (citations omitted).

It follows from the above that this adversary action is time-barred only if the final significant event necessary to make the claim suable occurred prior to September 12, 1982—i.e., six (6) years prior to when it was commenced.

Although the fraud of which Nationwide is accused arguably began on September 10, 1982, when Allegar sent the above letter to Mr. Berringer, the final significant event upon which the alleged fraud is based occurred on December 6, 1982, when Nationwide remitted $34,599.76 from Mr. Berringer's Security Compensation to Credit Union in satisfaction of debts owed to it by Mr. Berringer. Since this adversary was brought less than six (6) years from this date, it is not barred by the applicable statute of limitation.

## III

### FRAUDULENT MISREPRESENTATION

Fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture. *In re Reichert's Estate*, 356 Pa. 269, 51 A.2d 615, 617 (1947). One who fraudulently makes a misrepresentation of fact or law for the purpose of inducing another to act or to refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused him by his justifiable reliance upon the misrepresentation. *Savitz v. Weinstein*, 149 A.2d 110, 113 (Pa.1959).

The essential elements of fraud are as follows:

1. a false representation of an existing fact;

2. if the misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction involved; if the misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is not a requisite to the action;

3. *scienter*, which may be either actual knowledge of the falsity of a representation, reckless ignorance of its falsity, or mere false information where a duty to know is imposed by reason of special circumstances;

4. reliance, which must be justifiable, so that common prudence or diligence could not have ascertained the truth; and

5. damage to the person relying thereon.

*Shane v. Hoffmann*, 227 Pa.Super. 176, 324 A.2d 532, 536 (1974) (citations omitted).

Under Pennsylvania law, the plaintiff in a fraud action has the burden of proving each and every essential element by clear and convincing evidence, rather than by a mere preponderance of the evidence. *Beardshall v. Minuteman Press International, Inc.*, 664 F.2d 23, 26 (3rd Cir.1981) (citing *Snell v. Pennsylvania*, 490 Pa. 277, 416 A.2d 468, 470 (1980)).

### A. False Representation Of An Existing Fact

Nationwide represented to Mr. Berringer that he had voluntarily "assigned" his right to receive Security Compensation to Credit Union and that Credit Union therefore had "priority" to the funds. Allegar, in the letter dated September 10, 1982, informed Mr. Berringer that he had given "... a voluntary assignment to the Credit Union for reimbursement of their monies, which has priority". Parsons, in the letter dated

October 19, 1982, did not expressly state that Mr. Berringer had assigned his right to his Security Compensation and that Credit Union therefore had priority. He did, however, indicate that Mr. Berringer's indebtedness to Credit Union would have to be satisfied out of the Security Compensation and that Mr. Berringer's Extended Earnings were insufficient to satisfy the claims in full. These representations of fact were false.

As has been noted, Credit Union had four (4) claims against Mr. Berringer. Specifically, it had a claim in the amount of $23,-867.66 arising out of the promissory note executed on December 19, 1978; a claim in the amount of $2,189.98 arising out of the note executed on July 13, 1979; a claim in the amount of $6,685.03 arising out of the note executed on November 13, 1980; and a claim in the amount of $1,866.07 arising out of a Visa credit line account.

The *only* document in existence arguably indicating that Mr. Berringer had assigned his right to receive his Security Compensation was a form denominated "PAYROLL COMMISSION DEDUCTION AUTHORIZATION FOR LOAN REPAYMENT ONLY" executed on November 13, 1980 in connection with the loan of the same date.

Nationwide has conceded that no such document ever had been executed by Mr. Berringer in connection with the Visa credit line account.

Although Nationwide was unable to produce similar documents for the loans of December 19, 1978 and July 13, 1979, it nonetheless insisted that plaintiff had indeed executed such documents. Nationwide claims that it was unable to produce said documents because it previously had been the practice of Credit Union to retain such documents for only seven (7) years, after which time they were destroyed. This was so even though on many occasions the loan term exceeded seven (7) years.

According to Nationwide, the documents pertaining to these loans had been destroyed in the ordinary course of business prior to commencement of this adversary action. This was done even though the

term of debtor's loan exceeded seven (7) years.

We find the procedures utilized by Nationwide to be curious at best. In particular, the court finds it difficult to accept that documentation necessary to a transaction would be destroyed prior to the completion of the obligation. Clearly, defendant's change in procedures after this incident was warranted.

There does appear to be one document in existence which evidences plaintiff's debt of November 13, 1980. Clearly it does not evidence an intent by Mr. Berringer to "assign" to Credit Union his right to receive Security Compensation to the extent necessary to satisfy that particular loan. Equally clearly, this document does not grant to Credit Union a "priority" over other creditors and/or even plaintiff.

▆▆ An assignment is "a transfer or setting over of property or of some right, or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel, or thing". *In re Purman's Estate*, 358 Pa. 187, 56 A.2d 86, 86 (1948). To effect an assignment, the assignor must at the time of the assignment have a present intent to transfer or divest himself of his rights. *Melnick v. Pennsylvania Co. for Banking and Trusts*, 180 Pa.Super. 441, 119 A.2d 825, 826 (1956). It is appropriate, when interpreting an assignment, to consider the circumstances surrounding the execution of the document, especially if the language is ambiguous. An uncertainty in the meaning of an assignment must be construed against the party who prepared it. *See* 3 P.L.E. Assignment § 51 at p. 186 (1957) (citations omitted).

▆▆ The language of the document indicates that Mr. Berringer did not *divest* himself of the right to receive his Security Compensation in favor of Credit Union. Rather, the language instead merely "authorized" Nationwide to "make deduction" from the commissions, etc., to which he was entitled and to remit those amounts to Credit Union on his behalf in payment of

that particular loan. Such language, standing alone, is not sufficient to give rise to an assignment.

Moreover, Mr. Berringer never *intended* to divest himself of his right to the Security Compensation. His intention in executing the document merely was to allow Nationwide to make payments on the loan from said funds on his behalf, thereby eliminating the need for him to do so.

Even assuming that the language of this document indicates that Mr. Berringer had assigned his right to receive his Security Compensation to Credit Union, and further assuming that he so intended, there is yet another reason why said document did not constitute an assignment. As has been noted, Paragraph 18 of the Agent's Agreement required that any assignment by Mr. Berringer of his right to receive sums due and owing to him under said Agreement had to be consented to in advance and in writing by an officer of Nationwide. No such prior written consent was ever given by Nationwide.[1]

### B. *Innocent Misrepresentation*

The misrepresentations by Allegar and Parsons were not innocently made. Rather, they were knowingly made by employees of Nationwide as part of a campaign calculated to persuade Mr. Berringer to consent to having his Security Compensation applied towards his outstanding indebtedness to Credit Union.

Even if said misrepresentations were innocently made, they unquestionably were material to Mr. Berringer's election to accept the discounted present value of his DCIC instead of waiting until his 60th birthday on December 1, 1990. He would not have so elected had Allegar and Parsons not made the above misrepresentations.

### C. *Scienter*

Nationwide had actual knowledge of the falsity of the representation to Mr. Berringer that he had assigned to Credit Union his right to receive his Security Compensation. Parsons was aware that Nationwide had never executed a written consent to any purported assignment, as was required by Paragraph 18 of the Agent's Agreement. Parsons, as an attorney, understood the legal significance of this—i.e., that the purported assignment was not really an assignment. Nationwide, on whose behalf Parsons acted, accordingly also must be charged with such actual knowledge.

Even if it did not have actual knowledge of the falsity of the above representations, Nationwide at the very least must be charged with reckless disregard of their falsity. Neither Allegar nor Parsons had ever reviewed the document executed by Mr. Berringer on November 13, 1980 to ascertain whether in truth it constituted an assignment. Moreover, neither of them took the time to review relevant files to verify that there existed such documents with respect to the loans of December 19, 1978 and July 13, 1979. Allegar and Parsons instead merely repeated to Mr. Berringer the erroneous information which had been conveyed to them by employees of Credit Union.[2] Viewed in defendant's best light, such conduct must at least be characterized as reckless.

### D. *Justifiable Reliance*

The trust reposed in Nationwide by Mr. Berringer was justifiable under the circumstances. He had been an agent for Nationwide for approximately eleven (11) years prior to his resignation. Nationwide

---

1. Nationwide's witnesses, who insisted that Mr. Berringer had executed purported "assignments" with respect to the loans of December 19, 1978 and July 13, 1979, testified that said documents were identical in form to the one executed on November 13, 1980. Thus, even if Mr. Berringer did execute such documents with respect to these loans, they too would not constitute assignments for the reason just discussed.

2. Nationwide and Credit Union, although distinct entities, are closely related. Credit Union is located in the corporate headquarters of Nationwide in Columbus, Ohio. Employees frequently are transferred back and forth between the two entities. Also, internal memoranda flow freely between them. The letters by Allegar and Parsons, both of whom were employees of Nationwide, were prompted by inquiries and memoranda by employees of Credit Union.

had never misled him during that time and had always treated him fairly. Moreover, Mr. Berringer has only a high school education and did not have the training to determine for himself whether or not he had assigned his rights to Credit Union. Also, his financial situation made it *unreasonable*, if not economically impossible, for him to seek legal advice and to sue Nationwide to recover the full amount of his Security Compensation. Mr. Berringer was unemployed for nearly an entire year after his resignation and had no source of income during that period. He and his wife were forced to rely on their children for support and desperately needed money to live on until he could procure employment. In other words, Mr. Berringer could not afford the delay and expense of consulting an attorney and suing Nationwide. He reasonably elected instead to rely on Nationwide's representations and took the discounted present value of his DCIC. By doing so, Mr. Berringer assured himself of at least some money on which to survive after Credit Union had been paid and until he could find employment.

Indeed, Allegar and Parsons acknowledged that they themselves accepted and trusted defendant's written pronouncements. Clearly, if these learned representatives of defendant had a basis for reliance then surely plaintiff's reliance was justified.

### E. *Detrimental Reliance*

■ Nationwide denies that Mr. Berringer suffered any legally cognizable injury as a result of his reliance on the above misrepresentations. According to Nationwide, one who is fraudulently induced to do something which he is under legal obligation to do, such as pay a just debt, suffers no legally cognizable damage. This position is without merit in this instance.

Credit Union was an unsecured creditor with respect to the four debts in question. The Berringers had not granted it a security interest in anything as collateral for the debts.

Absent voluntary payment by Mr. Berringer, Credit Union had no means under Pennsylvania law of legally obtaining the funds remitted to it by Nationwide. Even had Credit Union obtained a judgment against Mr. Berringer, which it had not, Credit Union could not have executed upon plaintiff's Security Compensation and received it from Nationwide. Commissions of individuals shall, while in the hands of an employer, be exempt from attachment, execution, or other process, except in action for support, for board for less than four (4) weeks, or under the Higher Education Assistance Act. *See* 42 Pa.C.S.A. § 8127 (Purdon's Supp.1990).

Mr. Berringer undoubtedly suffered pecuniary harm as a result of his reasonable reliance upon the false representations knowingly made by Nationwide. Had he not so relied, Credit Union would not have been able to obtain the funds in question and they would have gone directly to plaintiff instead.

### F. *Prejudgment Interest*

The chapter 7 trustee is entitled to recover from Nationwide $34,599.74, which is the amount of Mr. Berringer's Security Compensation it unlawfully remitted to Credit Union.

The trustee also seeks an award of interest upon said amount from the date of its remittance—i.e., December 6, 1982—to the date of judgment.

■ Common law damages for delay may, at the court's discretion, be awarded in tort actions brought under Pennsylvania law when the amount is liquidated or capable of mathematical ascertainment. *American Enka Co. v. Wicaco Machinery Corp.*, 686 F.2d 1050, 1057 (3rd Cir.1982). They are to be awarded at the statutory rate set forth at 41 Pa.Stat.Ann. § 202 (Purdon's Supp.1990)—i.e., six percent (6%) *per annum*—from the date on which the cause of action arose. *Id.*

■ An award of common law delay damages is appropriate in this case. Mr. Berringer was wrongfully deprived of a sum of money which is determinable with mathematical exactitude—i.e., $34,599.74. Accordingly, interest on this amount also will be awarded at the statutory rate from

December 6, 1982, that date on which the present cause of action accrued.

An appropriate Order will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 29th day of March, 1991, in accordance with the foregoing Memorandum Opinion of this same date, it hereby is ORDERED that judgment is entered in favor of plaintiff James R. Huff, Trustee, and against defendant Nationwide Insurance Company in the amount of $34,599.74 plus interest at the statutory rate of six percent (6%) *per annum* from December 6, 1982 until the date of this Order.