**Alfred EDMONDSON, Appellant,**

v.

**Edward J. ZETUSKY, individually and as Member of Council of the City of Chester, and Annette M. Burton, individually and as Member of Council of the City of Chester, and Charles P. McLaughlin, individually and as Member of Council of the City of Chester, and James P. Sharp, individually and as Member of Council of the City of Chester, and Steven McKellar, individually and as Member of Council of the City of Chester, and Barbara Bohannon–Sheppard, individually and as Mayor of the City of Chester, and City of Chester.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1996.

Decided April 10, 1996.

---

Robert D. Marcinkowski, for Appellant.

Daniel J. Divis, for Appellee, Mayor Barbara Bohannon–Sheppard.

Before DOYLE, PELLEGRINI and KELLEY, JJ.

KELLEY, Judge.

Alfred Edmondson (Edmondson) appeals from the order of the Court of Common Pleas of Delaware County granting summary judgment in favor of Barbara Bohannan–Sheppard, Mayor of the City of Chester (the Mayor).[1] We affirm.

The issues presented for review are whether Edmondson has stated valid claims against the Mayor for breach of contract and fraudulent misrepresentation, and whether the Mayor's actions constituted a crime, actual fraud, actual malice or willful misconduct so as to preclude official immunity under the Judicial Code, 42 Pa.C.S. § 8546.

### Facts

Edmondson, in addition to his full-time employment with Omni Equipment Company, held a part-time position as a radio talk show host for a Sunday morning program called "Heart of the Corridor" in which he interviewed various persons to disseminate information to the citizens of the City of Chester on such topics as government, politics, drug rehabilitation, AIDS and welfare.

Sometime in January 1992, Edmondson interviewed the Mayor, who was just recently elected. After the interview, Edmondson was told by the Mayor and her campaign manager, Pat Torosian, that there was money in the budget for a press secretary to the

Mayor. Edmondson was asked to submit a resume to be considered for the position and was told that he would be contacted for an interview.

Edmondson was interviewed by the Mayor and Terry Rumsey on March 4, 1992 in City Council Chambers. Edmondson admits that he was told at the interview that two Council members, Annette Burton and Charles McLaughlin, had to be told that the Mayor wished to hire him before he could be brought on board with the City. At the interview, the Mayor also discussed a salary range with him and the duties he would be performing for the Mayor, as well as for the members of City Council. No term of employment was ever discussed.

On March 6, 1992, Edmondson received a call from the Mayor and was told he was the top candidate for the press secretary position. Edmondson was asked to begin this position as soon as possible and consequently, gave notice to Omni that he was resigning. On March 16, 1992, he reported to Chester City Hall for his first day on the job as press secretary. While over in the payroll department filling out application forms, Edmondson learned that he would not be put onto the payroll until City Council approved his appointment as press secretary. Edmondson informed the Mayor, who told him she would take care of everything. Edmondson was also told by Councilperson Burton that same day that he could not be hired until his appointment had been approved by City Council.

On March 26, 1992, Edmondson attended a City Council meeting at which two things occurred which concerned him both directly and indirectly. Specifically, City Council tabled and never voted on the resolution calling for approval of Edmondson's appointment as press secretary. Secondly, City Council voted to set the salary of the position of the Mayor's Administrative Assistant (then Robert Hill) at $0.00. Later, after Robert Hill

1. The Honorable Clement J. McGovern, Jr., also entered another order the same day, December 22, 1994, granting summary judgment in favor of defendants Edward J. Zetusky, Annette M. Burton, Charles P. McLaughlin, and the City of Chester. Defendants James P. Sharp and Steven McKellar were later dismissed by agreement of the parties in an order dated January 10, 1995. Edmondson is only appealing the trial court's order granting summary judgment in favor of Mayor Bohannon–Sheppard.

left his position as Administrative Assistant, the Mayor attempted to appoint Edmondson to the position, even though City Council had set the salary at $0.00. Edmondson was told by the Mayor that his salary would be increased from $30,000.00 to $32,500.00. However, at a public meeting held April 23, 1992, City Council adopted an ordinance eliminating the position of Administrative Assistant to the Mayor. After that date, Edmondson did not return to the City of Chester.

■ On July 6, 1992, Edmondson filed his original complaint, in which he alleged that the Mayor was liable to him based on four separate theories: breach of contract, fraudulent misrepresentation, professional negligence and negligent infliction of emotional distress. The Mayor filed preliminary objections to the complaint which the trial court sustained, with leave for Edmondson to amend his complaint. Edmondson's amended complaint, filed on April 15, 1994, was the same as the original complaint except for Count IV, which was amended to allege intentional infliction of emotional distress. Count III for professional negligence was again stricken by the court on preliminary objections raised by the Mayor.[2] Thereafter, the Mayor filed her answer with new matter to the amended complaint. Following Edmondson's deposition, the Mayor filed a motion for summary judgment which the trial court granted on December 22, 1994. This appeal followed.[3]

■ Summary judgment may be granted where the moving party has established that no material issue of fact remains and they are entitled to judgment as a matter of law. *McNeal v. City of Easton,* 143 Pa. Cmwlth. 151, 598 A.2d 638 (1991). We must review the record in the light most favorable to the non-moving party. *Id.*

Edmondson argues that the trial court erred in granting summary judgment for the Mayor because the record establishes and evidences as a matter of law, the terms of a contract by and between himself and the Mayor individually, and that at the very least, the record shows that there are material issues of fact remaining, thereby precluding summary judgment.

Edmondson argues that there was a valid, enforceable oral agreement between the Mayor and himself for valid consideration and with mutual obligations. The agreement specified the duties he was to perform as press secretary and the salary he was to receive. Edmondson argues that the term of the contract of employment was expected to be the administrative term of the Mayor, although he admitted at his deposition that this was an assumption he made and that he never discussed any term of employment with the Mayor.

The Mayor argues that because the City of Chester is a Third Class City operating pursuant to the provisions of its Home Rule Charter, codified at 323 Pa.Code §§ 11.1–101—11.11–1105, which requires that an employment agreement be adopted by an official act and public vote by City Council, she would have had no right under the law to unilaterally enter into a binding employment agreement without City Council's prior approval. Furthermore, the Mayor argues, absent explicit legislative authority enabling a municipality to enter into employment contracts, the contracts are invalid and unenforceable in their entirety. *Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 166 A.2d 278 (1960).

Under Chester's Home Rule Charter, any employment agreement would have to be adopted by an official act and public vote by the City Council. Only the City Council is authorized to enter into agreements binding on the City of Chester. "The Council may make contracts for all lawful purposes, subject to general law or this Charter. ..." 323 Pa.Code § 11.7–713. In order to take any action, they need a majority of the Council

---

**2.** The record is not clear as to why there is an almost two year time gap between the filing of the original complaint and the amended complaint.

**3.** Our scope of review over a trial court's grant of summary judgment is limited to determining whether the trial court made an error of law or abused its discretion. *Salerno v. LaBarr,* 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal denied,* 537 Pa. 655, 644 A.2d 740 (1994).

members to constitute a quorum and any action taken by the majority of the members is "binding upon and constitute[s] the action of the Council." 323 Pa.Code § 11.2–212. "All actions of the Council shall be taken by the adoption of an ordinance, resolution or motion," at a publicly held meeting with public notice of such meeting. 323 Pa.Code §§ 11.2–213 and 11.2–211.

■ As for the duties and powers of the Mayor, they are also proscribed under the Home Rule Charter. Specifically, the Mayor "shall be a member of City Council and shall have any and all additional powers and duties which may be conferred upon him by the Administrative Code and this Charter." 323 Pa.Code § 11.3–302. The Mayor is given: (1) authority to "supervise the conduct of all city officers;" (2) emergency powers to "preserve the public peace;" and (3) the authority to "appoint an assistant to assist in the administration of the functions of the Mayor." 323 Pa.Code §§ 11.3–303, 11.3–304, and 11.3–305. However, additional powers granted the Mayor may only be taken with the approval of the City Council. (*See* 323 Pa. Code § 11.6–605, the Mayor may appoint Director of Personnel with Council's approval; 323 Pa.Code § 11.6–608, the Mayor may appoint and fix the compensation of a City Engineer with Council's approval.) Noticeably absent from these powers and duties is the authority to enter into ·an employment contract, binding on the City of Chester, for a press secretary. Thus, the Mayor had no right under the law to hire Edmondson without City Council's approval. The contract was void at its alleged inception, even if we were to find evidence of an agreement between Edmondson and the Mayor, which we do not.

■ The burden of proving the existence of a contract lies with the party relying on its existence. *Viso v. Werner*, 471 Pa. 42, 369 A.2d 1185 (1977). In the case of an oral contract, as is asserted in this matter, Edmondson must prove that the contract was clear and precise. *Suravitz v. Prudential Insurance Co.*, 261 Pa. 390, 104 A. 754 (1918). Moreover, it is a well-established principle of

Pennsylvania law that "unless the employee furnished a consideration in addition to his mere services, he is an employee-at-will and his employment may be terminated at any time for any reason." *Betts v. Stroehmann Brothers*, 355 Pa.Superior Ct. 195, 512 A.2d 1280 (1986).

Edmondson testified that at the interview he was told that his salary would be $30,-000.00, that the job as press secretary was very demanding and that two members of City Council had to be told about his appointment. (Notes of Testimony (N.T.), pp. 59–60, 123–25.) Edmondson testified that at no time did the Mayor discuss a specific term of employment with him. (*Id.*, pp. 60–61.) Edmondson also admitted that he understood that without a contract providing for a specific term or length of employment with a termination clause, he was an "at-will" employee. (*Id.*, p. 70.) Edmondson also admitted that at no time did the Mayor ever expressly represent to him that she had the sole authority to hire him. (*Id.*, pp. 74, 130.)

■ Edmondson's allegations and evidence of record, even when viewed in a light most favorable to him, fail to establish the existence of an oral agreement between himself and the Mayor. Without a doubt, the Mayor had the intention of bringing Edmondson aboard her administration as her press secretary and later, as her administrative assistant. However, in light of Edmondson's admissions that they never discussed a specific term of employment and that he believed that he would be working for and paid by the City of Chester,[4] there is no agreement on all the necessary terms to establish an oral contract for employment between himself and the Mayor. Accordingly, for all of the foregoing reasons, we conclude that the trial court properly granted summary judgment in favor of the Mayor as to Count I, breach of contract.

Next, Edmondson argues that the trial court erred in granting summary judgment as to Count II of his amended complaint, alleging fraudulent misrepresentation. Edmondson asserts that the Mayor's repre-

---

**4.** Edmondson stated at his deposition that he believed that he was a city employee and, as such, that he would be paid by the City and not the Mayor. N.T., p. 127.

sentation to him that he "had" the position as press secretary, without informing him that she needed the approval of City Council to hire him, was a material misrepresentation made either knowingly or in conscious ignorance of the truth, which he justifiably relied upon to his detriment. Edmondson argues that his reliance was reasonable because he is an unsophisticated party with only a high school diploma and a few non-credit college courses. Therefore, argues Edmondson, *Pittsburgh Baseball, Inc. v. Stadium Authority of the City of Pittsburgh,* 157 Pa.Cmwlth. 478, 630 A.2d 505 (1993), cited by both the Mayor and the trial court as supportive on the issue that his reliance was not reasonable, is inapposite because it involved sophisticated parties who had the benefit of legal counsel to guide them.

■ In Pennsylvania, in order to maintain a cause of action for fraudulent misrepresentation, there must be (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result. *Savitz v. Weinstein,* 395 Pa. 173,.149 A.2d 110 (1959); *Kuehner v. Parsons,* 107 Pa.Cmwlth. 61, 527 A.2d 627 (1987), *petition for allowance of appeal denied,* 517 Pa. 626, 538 A.2d 879 (1988). Our Supreme Court has held that fraud must be proved by evidence that is clear, precise and convincing. *Snell v. Pennsylvania,* 490 Pa. 277, 416 A.2d 468 (1980). In addition, the trial court is required to decide as a matter of law, before the case is submitted to the jury, whether the plaintiff's evidence is sufficiently clear, precise and convincing to make out a prima facie case. *Id.*

As stated above, Edmondson argues that the misrepresentation made by the Mayor was in telling him that he "had" the position as her press secretary and asking him when he could begin his new position. Edmondson argues that at no time before he reported to work on March 16, 1992, did the Mayor inform him that she needed City Council approval to hire him; that she herself did not have the authority to hire him; and that she did not have the authority to offer him a job.

The Mayor argues that she never represented to him that she had the authority to hire him for the press secretary position knowing or consciously ignorant of the fact that City Council had to approve his being hired. The Mayor asserts that Edmondson's own evidence clearly establishes that she made no misrepresentations because he admitted in his deposition that she never expressly told him she had the sole authority to hire him. (N.T., p. 130.) Accordingly, the Mayor argues, Edmondson has failed to establish the initial element of his cause of action by clear and convincing evidence. *Snell.*

■ We agree with the Mayor that even viewing the evidence in the light most favorable to Edmondson, he has failed to establish the initial elements of fraudulent misrepresentation. Moreover, we also agree with the trial court that Edmondson has failed to establish justifiable reliance.

*Pittsburgh Baseball,* cited by both the Mayor and the trial court, involved an action brought by the team's owners, a conglomeration of local companies formed for the purpose of purchasing the Pittsburgh Pirates baseball franchise, against the City of Pittsburgh and the Stadium Authority, for breach of an alleged oral promise by the late Mayor to pay $4.2 million to the owners in exchange for their agreement to purchase the team and keep the team in the city. The trial court therein held that there was no binding contract because city council had not taken any action on the alleged contract and found, with respect to the owners' promissory estoppel claim, that there was no justifiable reliance by the owners on the mayor's alleged promise.

This court agreed with the trial court in both respects, and with respect to the promissory estoppel claim stated that "we merely note that 'it is a general and fundamental principle of law that persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or its officers to make the contract or incur the debt.' *Pittsburgh Paving Co. v. City of Pittsburgh,* 332 Pa. 563, 569, 3 A.2d 905, 908 (1938)." *Pittsburgh Baseball,* 630 A.2d at

509. Concluding that the owners failed to sufficiently plead that they reasonably relied on the mayor's alleged promise, we affirmed the trial court's dismissal of the promissory estoppel claim.

We must similarly reject Edmondson's argument that his reliance on the Mayor's misrepresentation that he had the job as press secretary without previously informing him that she needed to secure City Council's approval was justifiable. Edmondson admitted that the Mayor did not expressly tell him she had the authority to hire him and that he just assumed that she had such authority. (N.T., p. 130.) Edmondson also agreed that he had been told by the Mayor that two members of City Council had to be told about her desire to bring him on board her administration. (*Id.*, p. 126.) These were red flags which should have alerted Edmondson to at least seek further information or clarification of the hiring procedures. *Pittsburgh Baseball.* Edmondson's peripheral involvement in the political issues affecting the City of Chester at this time by way of his radio show which, in his words, was for the purpose of "disseminating pertinent facts and views important to the citizenry of Chester ... in which opposing political views could be expressed over the air waves" belie his assertions that he was "unsophisticated" and therefore at a disadvantage when dealing with the Mayor. (Reproduced Record, p. 371.) Accordingly, we conclude that the trial court properly granted summary judgment in favor of the Mayor as to Count II, fraudulent misrepresentation.

Finally, we address *Edmondson's* remaining argument that the trial court erred in concluding that the Mayor was immune under section 8546 of the Judicial Code, 42 Pa.C.S. § 8546. Edmondson argues that section 8550 of the Judicial Code, 42 Pa.C.S. § 8550, provides an exception to the official immunity provided by section 8546, thereby removing the safeguard of official immunity for injury that is caused by acts that constitute actual fraud and willful misconduct. Edmondson argues that the Mayor was fully aware that as a result of her knowing and willful failure to inform him that she lacked the authority to hire him, he would act to his detriment and suffer injuries as alleged in his amended complaint. Accordingly, she has been stripped of her official immunity under section 8546.

Section 8546 provides in pertinent part:

### Defense of official immunity.

In any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee, the employee may assert on his own behalf, or the local agency may assert on his behalf:

\* \* \* \* \* \*

(2) The defense that the conduct of the employe which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law.

(3) The defense that the act of the employee which gave rise to the claim was within the policymaking discretion granted to the employee by law. For purposes of this subsection, all acts of members of the governing body of a local agency or of the chief executive officer thereof are deemed to be within the policymaking discretion granted to such person by law.

Section 8550 provides as follows:

### Willful misconduct

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

■ Therefore, the Mayor, as Chief Executive Officer of the City of Chester, is granted immunity for all acts taken as May-

or, as any and all acts by the chief executive officer are deemed to be within the policy making discretion granted to them by law. The only way the Mayor could be stripped of her official immunity is if Edmondson established that her conduct amounted to "willful misconduct." *Uram v. County of Allegheny*, 130 Pa.Cmwlth. 148, 567 A.2d 753 (1989). "Willful misconduct, for the purposes of tort law, has been defined by our Supreme Court to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." *King v. Breach*, 115 Pa.Cmwlth. 355, 540 A.2d 976, 981 (1988) (citation omitted.).

Reviewing the record before us, we cannot find any evidence that the Mayor's actions constituted "willful misconduct." In Edmondson's own mind, the Mayor's intention was to hire him as her press secretary. During the phone conversation in which he alleges he received the offer of the position, Edmondson stated that the Mayor expressed the hope that he would work out better than some of the other people she had started with and that once the dispute arose with City Council over his appointment, the Mayor continually told him not to leave, that she "would take care of this whole situation" and "get the matter worked out." (N.T., pp. 60, 83, 89.) Edmondson also stated that the Mayor told him that she had spoken to City Council about him and that City Council was denying that she had spoken to them. (*Id.*, p. 84.) Finally, Edmondson stated that it was the Mayor who was "leading the way on everything" and that she even offered to pay his salary out of her own pocket until she could get things straightened out. (*Id.*, p. 128.)

The Mayor's conduct, as set forth above and in Edmondson's pleadings, does not rise to the level of willful misconduct so as to strip her of her official immunity under the law. Accordingly, we conclude that the trial court did not err in also concluding for the same reasons, that the Mayor was entitled to judgment as a matter of law.

For the reasons stated above, we affirm the order of the trial court granting summary judgment in favor of the Mayor.

### ORDER

NOW, this 10th day of April, 1996, the order of the Court of Common Pleas of Delaware County, entered January 3, 1995, at No. 92–9962, is hereby affirmed.