**Honey Creek Stone Co. v. Telsmith Inc.**

34

C.P. of Lawrence County, no. 11347 of 2003, C.A.

*Richard T. Victoria* and *John J. DeCaro Jr.,* for plaintiff.

*Kevin L. Colosimo* and *Andrew G. Jenkins,* for defendant Telsmith Inc.

*Stephen L. Grose,* for defendant Stewart-Amos Equipment Co.

PICCIONE, *J.,* December 31, 2009—Before the court for disposition is defendants' joint praecipe for summary judgment. The current action arose out of a pur-

chase of a stone crusher by Honey Creek Stone Company. In late 2002, Honey Creek contacted Telsmith Inc. for the purpose of purchasing a new stone crushing plant for its Petersberg, Ohio facility. Honey Creek desired to replace its existing plant and crusher in order to increase production. After examining the existing plant and performing an assessment of Honey Creek's needs, Telsmith referred Honey Creek to Stewart-Amos Equipment Company, a dealer of Telsmith's machinery in Pennsylvania. During negotiations, Stewart-Amos informed Honey Creek that money could be saved by purchasing a used or refurbished stone crusher as part of the new plant.

On December 11, 2002, Honey Creek began purchasing components for its plant. On December 16, 2002, Honey Creek agreed to purchase a secondary crushing and screening plant from Telsmith and Stewart-Amos. According to Honey Creek, the agreement between the parties remained open-ended because no decision was made as to whether a new or used crusher would be purchased. Honey Creek later discovered that Telsmith had a used crusher available in Tennessee. Telsmith inspected the used crusher and reported its findings to Stewart-Amos. On January 16, 2003, Stewart-Amos wrote to Honey Creek, stating that the crusher "seems to be in good shape with roller bearings, bronze sleeves, and head and shaft all O.K." Plaintiff's exhibit 16. Shortly thereafter, Honey Creek agreed to purchase the used crusher. Telsmith warranted the crusher for a period of six months and included, in bold and capital letters, a disclaimer of all other warranties in its service and warranty policy manual.

The crusher was delivered to Honey Creek in the spring of 2003 and began malfunctioning soon after it started operating. Despite numerous attempts, Telsmith and Stewart-Amos were unable to satisfactorily repair the crusher and related equipment. Citing its dissatisfaction with the crusher, Honey Creek refused to pay the balance of the purchase price to Stewart-Amos. Honey Creek continued to use the crusher until 2006, when it was discovered that the crusher needed a replacement liner. In April of 2006, Honey Creek met with a representative of Ohio-CAT, a dealer for Telsmith's machinery in Ohio, who advised Honey Creek that there were problems with the support bowl. "Smithbond" was discovered in areas suggesting that the crusher was not properly refurbished before being delivered. Honey Creek purchased replacement parts, and the crusher continued to operate throughout 2006. During the following years, Honey Creek did not crush stone at is Petersburg, Ohio facility.

The current action commenced when Stewart-Amos filed suit against Honey Creek in September of 2003, seeking payment due on the crusher and related equipment. On December 1, 2003, Honey Creek filed a complaint against Telsmith and Stewart-Amos, asserting claims for breach of warranty, breach of contract and negligence. Defendants filed preliminary objections to the complaint, and the negligence counts were stricken by order of court dated June 23, 2004. On June 12, 2006, the two cases were consolidated by order of court. Seeking to add a claim of fraudulent inducement, Honey Creek filed a motion to amend its complaint, which was granted on May 20, 2008. Stewart-Amos and Telsmith each

filed motions for summary judgment dated March 20, 2009 and March 23, 2009, respectively. The parties submitted briefs supporting their positions regarding the motion, and this court conducted a hearing on June 3, 2009.

Under Pennsylvania law, the standard for summary judgment is set forth by Rule 1035.2 of the Pennsylvania Rules of Civil Procedure. The rule states that:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2

The rule explains that summary judgment is appropriate only in those instances where "there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery" and the moving party is entitled to judgment as a matter of law. *Fine v. Checcio,* 582 Pa. 253, 265, 870 A.2d 850, 857 (2005); see also, Pa.R.C.P.

1035.2. The moving party bears the burden of proving that no genuine issue of material fact exists. *Rush v. Philadelphia Newspapers Inc.,* 732 A.2d 648, 650 (Pa. Super. 1999). For the purposes of summary judgment, material facts are those that have a direct effect on the outcome of the case. *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662, 664 (Pa. Super. 2000).

In determining whether summary judgment is appropriate, the trial court is required to view the record in a light most favorable to the non-moving party, and "all doubts as to the existence of a genuine issue of material fact must be resolved in favor of the nonmoving party." *P.J.S. v. Pennsylvania State Ethics Commission,* 555 Pa. 149, 153, 723 A.2d 174, 176 (1999) (citing *Kapres v. Heller,* 536 Pa. 551, 640 A.2d 888 (1994)). A trial court should only grant a motion for summary judgment when the facts of record are so clear that reasonable minds could not disagree on the outcome. *Basile v. H & R Block Inc.,* 563 Pa. 359, 365, 761 A.2d 1115, 1118 (2000) (citing *Cochran v. GAF Corp.,* 542 Pa. 210, 215, 666 A.2d 245, 248 (1995). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission,* 134 Pa. Commw. 494, 504, 579 A.2d 1358, 1363 (1990).

In Counts I and II of the amended complaint, Honey Creek alleges that both Telsmith and Stewart-Amos breached various express and implied warranties regarding the plant and, specifically, the crusher. Stewart-Amos initially argues that it did not provide any warranty to Honey Creek relative to the crusher or any other equip-

ment used in the plant and that any warranties from the contracts between Stewart-Amos and Honey Creek were from Telsmith.

Honey Creek provided sufficient evidence to demonstrate that a warranty from Stewart-Amos existed. For example, the dealership agreement between Telsmith and Stewart-Amos stated that "Dealer agrees to extend the same warranty and no other to purchaser of manufacturer's products." Plaintiff's exhibit 10. In letters to Honey Creek dated March 5, 2003, Stewart-Amos enclosed Telsmith's warranty for equipment related to the stone crushing plant and stated that, as the dealer for the manufacturer, Stewart-Amos extends the same guarantee. Plaintiff's exhibit 16. The letter also indicated that Stewart-Amos would do everything possible to ensure that Honey Creek is satisfied with the product. *Id.* Frank Chulick, an employee of Stewart-Amos, testified that Honey Creek was not charged for any work done by Stewart-Amos consistent with the warranty. Plaintiff's exhibit 4. Finally, the letter to Honey Creek President Carmen Shick, stating that the crusher "seems to be in good shape," was written by Bill Starr of Stewart-Amos. Plaintiff's exhibit 16.

Despite minimal direct communication between Honey Creek and Stewart-Amos regarding warranties, evidence presented by Honey Creek suggests that Stewart-Amos was offering the same warranties as Telsmith. Stewart-Amos argues that, in the letter to Carmen Shick, it was merely relaying a message from Telsmith; however, "[i]t is not necessary to the creation of an express warranty that the seller . . . have a specific intention to

make a warranty." 13 Pa.C.S. §2313(b). Therefore, it is irrelevant what Bill Starr's intention was when he commented on the status of the crusher. Provided Honey Creek can demonstrate that "[m]achine seems to be in good shape" constitutes an express warranty, both defendants are bound by that statement.

The Pennsylvania Commercial Code states that express warranties are created as follows:

"(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." 13 Pa.C.S. §2313(a)(1) and (2).

"[A]n affirmation merely of the value of the goods or a statement purporting to be merely the opinion of the seller or commendation of the goods does not create a warranty." 13 Pa.C.S. §2313(b). Whether a statement constitutes an express warranty or an affirmation of the value of the goods depends on whether the statement became part of the basis of the bargain. 13 Pa.C.S. §2313, comment 8. Statements of the seller do become part of the basis of the bargain "unless good reason is shown to the contrary." *Id.*

Telsmith contends that describing the crusher as "in good shape" does not create an express warranty but instead constitutes puffery. "Puffery is an exaggeration

or overstatement expressed in broad, vague, and commendatory language." *Castrol Inc. v. Pennzoil Company,* 987 F.2d 939, 945 (3d Cir. 1993). It is generally understood as an expression of the seller's opinion to be discounted by the buyer. *Id.* Such opinion statements do not create express warranties. *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 103, 337 A.2d 893, 903 (1975).

The statement that the crusher seemed to be "in good shape" differs from the typical exaggerations that are classified as puffery. In January of 2003, Honey Creek was unsure whether to purchase a new or used crusher. Bill Starr's letter suggests that the decision had not yet been made at the time that the "in good shape" statement was made. The letter states that "Telsmith will make the following repairs *if* you decide to go the used route[.]" Plaintiff's exhibit 16. (emphasis added) One of the factors influencing Honey Creek's decision was whether a used crusher could fulfill its desire to increase production at its Petersburg facility. Honey Creek most likely took Bill Starr's statement as a guarantee that the crusher would perform the work Honey Creek had in mind. Suggesting that the crusher was capable of performing the intended work was not an exaggeration of the quality of the machine but rather a material statement that affected Honey Creek's decision. The "in good shape" statement, therefore, cannot be classified as puffery.

Telsmith further suggests that the statement could not have been part of the basis of the bargain because Bill Starr's letter was sent to Honey Creek after the contracts with Stewart-Amos were finalized. As indicated above, the letter itself shows that a decision regarding the pur-

chase of a new or used crusher was not made as of January 16, 2003. As a result, the statement could still qualify as an express warranty.

Both defendants argue that the disclaimers in their contracts with Honey Creek satisfied the requirements for valid disclaimers of all warranties, express or implied. "[C]ontractual provisions limiting warranties, establishing repair or replacement as the exclusive remedy for breach of warranty and excluding liability for special, indirect and consequential damages in a commercial setting are generally valid and enforceable." *New York State Electric & Gas Corp. v. Westinghouse Electric Corp.,* 387 Pa. Super. 537, 548, 564 A.2d 919, 924 (1989). "[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous." 13 Pa.C.S. §2316(b). "[T]o exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." *Id.* Section 2316 further provides:

"Words or conduct relevant to the creation of an express warranty and words of conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this division on parol or extrinsic evidence (section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable." 13 Pa.C.S. §2316(a).

"This section 'seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with lan-

guage of express warranty.'" *Morningstar v. Hallett,* 858 A.2d 125, 131 (Pa. Super. 2004).

The contract between Stewart-Amos and Honey Creek contained a waiver provision excluding all warranties. The warranty provided by Telsmith to Honey Creek limited damages and excluded all warranties except the six-month repair and replacement warranty. Both provisions appeared in capital letters and bold type, in contrast with the language of the rest of the agreement. Both provisions mentioned the implied warranty of merchantability among its exclusions. As a result, both provisions satisfied the requirements of a valid disclaimer of the implied warranties of merchantability and fitness for a particular purpose.

As stated above, a disclaimer is inoperative when it cannot be construed as consistent with the language of an express warranty. *Id.* Evidence presented by Honey Creek suggests that an express warranty was created when Bill Starr wrote that the used crusher seemed to be "in good shape" and "all O.K." Obviously, such an express warranty is inconsistent with a disclaimer excluding all express warranties. Defendants, therefore, failed to disclaim this express warranty.

It is undisputed that Telsmith provided a six-month repair and replacement warranty to Honey Creek. As indicated above, Stewart-Amos extended the same warranty to Honey Creek. Evidence was presented that both defendants performed repairs on the used crusher and other equipment. Questions remain as to whether those repairs were satisfactorily performed in accordance with the warranty. Defendants, therefore, failed to carry their

burden of demonstrating that no genuine issue of material fact existed with respect to the breach of the six-month warranty and that defendants were entitled to judgment as a matter of law.

For the foregoing reasons, the court concludes that there is a material question of fact as to whether both defendants breached warranties made to Honey Creek and that summary judgment is, therefore, inappropriate with respect to Honey Creek's breach of warranty claim.

Stewart-Amos argues that, if a breach of warranty occurred, damages recoverable by Honey Creek do not include consequential or incidental damages. Proposals submitted by Stewart-Amos and accepted by Honey Creek contained the following language: "Under no circumstances shall seller be liable for any consequential or incidental damages, expenses, losses or delays howsoever caused . . . ." Stewart-Amos' exhibits C, D. Stewart-Amos submits that this contractual language signed by Honey Creek effectively excludes recovery of any consequential or incidental damages for breach of warranty.

An agreement may limit the remedies that a party can recover for breach of warranty. 13 Pa.C.S. §2316. "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." 13 Pa.C.S. §2719(b). In other words, all remedies under the Pennsylvania Commercial Code, including consequential damages, are available if the exclusive remedy provision fails of its essential purpose. "[C]ourts generally have concluded that so long as the

buyer has the use of substantially defect-free goods, the limited remedy should be given effect. But when the seller is either unwilling or unable to conform the goods to the contract, the remedy does not suffice." *Chatlos Sys. Inc. v. Nat'l Cash Register Corp.,* 635 F.2d 1081, 1085 (3d Cir. 1980). "Whether a limited warranty has failed its essential purpose is a question of fact for the jury." *Woolums v. National RV,* 530 F. Supp.2d 691, 701 (M.D. Pa. 2008).

Honey Creek claims that the six-month repair and replacement warranty failed the essential purpose of remedying the alleged defects. Honey Creek presented evidence that Telsmith and Stewart-Amos failed to perform the necessary repairs. Carmen Shick testified that, despite defendants' repairs, the plant's production was at a lower level than the plant it replaced. Plaintiff's exhibit 1. Bill Starr testified that Stewart-Amos experienced "sincere problems" in trying to repair the crusher. Plaintiff's exhibit 3. Additional testimony was taken from employees of each of the parties describing the repairs that defendants performed. Plaintiff's exhibits 2, 5, 7, 9, 41, 42, and 43. Honey Creek also presented the December 23, 2008 process plant evaluation of David Lange, which stated that the crusher "cannot be operated at 100 percent efficiency" and "will never have a consistent enough gradation to maintain a full chamber, at all times, in the cone crusher." Plaintiff's exhibit A.

Defendants dispute Honey Creek's claims by offering evidence and testimony of their own. These conflicting accounts present a genuine issue of material fact regarding whether the repair and replacement warranty failed

its essential purpose of providing Honey Creek with a properly functioning plant and crusher. Therefore, defendants' motion for summary judgment must be denied with respect to the question of exclusion of remedies.

In Counts III and IV of the amended complaint, Honey Creek maintains claims for breach of contract against Telsmith and Stewart-Amos. It is undisputed that a contract existed between Honey Creek and Stewart-Amos; however, Telsmith argues that Honey Creek cannot maintain a claim for breach of contract against Telsmith because no contract existed between them.

Although a breach of contract action requires the existence of a contract, "a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties." *J.F. Walker Co. Inc. v. Excalibur Oil Group Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002). Telsmith offered to perform repairs and to refurbish the used crusher in the event that Honey Creek purchased it. Honey Creek accepted Telsmith's offer by purchasing the used crusher. Telsmith demonstrated that a contractual relationship existed by attempting to repair the crusher. Because the court finds that a contract existed between the parties based on their conduct, summary judgment on the breach of contract claim is inappropriate.

In Count VII of the amended complaint, it is alleged that Stewart-Amos and Telsmith fraudulently induced Honey Creek to purchase the crusher and other equipment. Defendants aver that they are entitled to summary judgment on the fraudulent inducement claim because: (1) the statute of limitations has passed; (2) the discovery

rule does not apply; (3) the economic loss doctrine does apply; and (4) there is no credible evidence to support Honey Creek's claim.

The statute of limitations for a claim of fraud is two years. 42 Pa.C.S. §5524(7). "Generally speaking, the statute of limitations begins to run as soon as the right to institute and maintain suit arises." *Lazarski v. Archdiocese of Philadelphia,* 926 A.2d 459, 461 (Pa. Super. 2007). "The law is clear that fraud or deceit tolls the statute of limitations until such time as the fraud has been discovered by the exercise of due diligence." *Rothman v. Fillette,* 503 Pa. 259, 266 n.3, 469 A.2d 543, 546 n.3 (1983). "If the plaintiff is successful in invoking the discovery rule, the cause of action accrues when plaintiff is aware or should have been aware of her injury and its cause, but the plaintiff has the burden of showing that she is entitled to the benefit of the rule." *Speicher v. Dalkon Shield Claimants Trust,* 943 F. Supp. 554, 557 (E.D. Pa. 1996). "In order to obtain the benefit of the rule, the plaintiff must show that she exercised diligence to ascertain the existence or cause of her injury but could not discover those facts in spite of her diligence." *Id.* "[T]he discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his [or her] injury and its cause at the time his [or her] right to institute suit arises." *Fine v. Checcio,* 582 Pa. 253, 269, 870 A.2d 850, 859 (2005).

In the present case, the court held an evidentiary hearing on January 31, 2008 and March 28, 2008. A letter dated November 21, 2003, was introduced at the hearing

as defendant's exhibit B. The letter is from Rick Patek, the president of Telsmith, to Frank Chulick, the president of Stewart-Amos. In the letter, Mr. Patek offered to replace the crusher's support bowl if Stewart-Amos would repurchase the cone crusher from Honey Creek and resell it. The cone crusher was delivered to Honey Creek in the spring of 2003. This letter was produced to Honey Creek on June 18, 2004. The letter did not state that a new support bowl was needed nor that it was needed because it was defective. As stated in this court's May 20, 2008 opinion, this letter was insufficient notice for Honey Creek to know or have reason to know of the cause of the problems with the cone crusher. See *Honey Creek Stone Co. v. Telsmith Inc.,* no. 11347 of 2003, C.A. (C.P. Lawrence Cty., May 20, 2008).

In April of 2006, Honey Creek contacted Ohio-CAT regarding the problems with the cone crusher. On April 25, 2006, Ohio-CAT met with Honey Creek to diagnose the problems with the cone crusher. It is at this point the president of Honey Creek, Carmen Shick, became aware that the cause of the problems with the cone crusher was due to a worn out support bowl. Mr. Shick stated that he understood:

"[T]he problem was that [the support bowl] was worn out and it was assembled at Telsmith in that type of fashion because Smithbond, which is rubberized backing material used in the assembly, was found between the seat of two different machine surfaces, where it could not have been if the surfaces met proper tolerances at the time of assembly." N.T., 3/28/08, p. 41.

Mr. Shick went on to testify that it was his understanding that Smithbond could not have gotten into the places

it did unless the support bowl was in need of repair or replacement when the stone crusher was refurbished. Honey Creek either knew or should reasonably have known of the cause of the problems with the cone crusher on April 25, 2006. As such, the statute of limitations began to run on that date. Honey Creek filed the motion for leave to file amended complaint on April 20, 2007, which is well within the two-year statute of limitations.

Defendants aver that the economic loss doctrine applies to bar a claim of fraudulent inducement because it is actually a renewal of the negligence claim that was stricken from Honey Creek's complaint. A claim of fraudulent inducement differs from a claim of negligence. An action sounding in negligence requires "an existence of a duty owed by one party to another." *Bortz v. Noon,* 556 Pa. 489, 501, 729 A.2d 555, 561 (1999). There is no "duty" element in a claim for fraudulent inducement. Honey Creek's fraudulent inducement claim is a different theory than the negligence actions stricken from Honey Creek's original complaint. Therefore, the court gives no weight to defendants' argument regarding the applicability of the economic loss doctrine.

Defendants argue that Honey Creek's claim for fraudulent inducement should be dismissed because there is no clear and convincing evidence to support its claim. Fraudulent inducement is a representation made with the intent of misleading another into relying on it (*i.e.,* a knowingly false representation with the intent to defraud or mislead). *Eigen v. Textron Lycoming Reciprocating Engine Division,* 874 A.2d 1179, 1185 (Pa. Super 2005).

The elements of fraudulent inducement are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury that was proximately caused by the reliance." *Id.* To survive a summary judgment motion, a plaintiff must present clear and convincing evidence of a defendant's fraud. *Highmont Music Corp. v. J.M. Hoffman Co.,* 397 Pa. 345, 350, 155 A.2d 363, 366 (1959); *Creswell v. Pennsylvania National Mutual Casualty Insurance Co.,* 820 A.2d 172, 179 (Pa. Super. 2003).

Stewart-Amos initially points out that fraudulent inducement claims are often barred when the contract at issue is fully integrated. This is because parol evidence may not be admitted based on a claim that there was fraud in the inducement of a fully integrated contract. *HCB Contractors v. Liberty Place Hotel Associates,* 539 Pa. 395, 399, 652 A.2d 1278, 1279 (1995). Stewart-Amos states that a review of Proposals I and II reveals that the contracts with Honey Creek were fully integrated.

"To determine whether or not a writing is the parties' entire contract, the writing must be looked at and 'if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties . . . .'" *Yocca v. Pittsburgh Steelers Sports Inc.,* 578 Pa. 479, 497-98, 854 A.2d 425, 436 (2004) (citing *Gianni*

*v. Russell & Co.,* 281 Pa. 320, 326, 126 A. 791, 792 (1924)). "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Yocca,* 578 Pa. at 498, 854 A.2d at 436-37 (2004).

The proposals between Stewart-Amos and Honey Creek cannot represent fully integrated contracts. The proposals were signed in December, before Honey Creek's decision to purchase a used crusher. Further, Proposal II states that the final contract amount would "be finalized after crusher decision." Stewart-Amos' exhibit D. Because the proposals reveal uncertainty as to the extent of the parties' engagement, the parol evidence rule is inapplicable.

In its amended complaint, Honey Creek avers that defendants fraudulently induced Honey Creek to purchase the plant and equipment at issue in this action. According to Honey Creek, defendants knew or reasonably should have known of the defects in the used crusher and the prior use of the equipment. Despite this knowledge, defendants failed to disclose this information to Honey Creek. Instead, defendants intentionally misled Honey Creek into believing that the equipment was in good shape and that it would be properly refurbished. The plant and equipment were purchased based on defendants' assurances.

As stated above, fraud or intent to defraud is never presumed, but instead must be shown by evidence that

is clear, precise, and convincing. *Snell v. Commonwealth,* 490 Pa. 277, 281, 416 A.2d 468, 470 (1980). Evidence presented by Honey Creek suggests that defendants were aware that the equipment was previously owned by Short Mountain Silica in Tennessee and that Telsmith was aware that the crusher had been used to crush sandstone. Plaintiff's exhibits 8, 13, 16, 27, 28, 29, 30, 35, 37. Honey Creek also offered evidence that Stewart-Amos expressed concerns about the condition of the support bowl. Plaintiff's exhibit 3. While Honey Creek's exhibits and testimony suggest defendants were aware that the equipment had deteriorated to some degree, they do not provide clear and convincing evidence of fraud.

Honey Creek failed to demonstrate that defendants intended to mislead Honey Creek into purchasing the equipment. None of the evidence presented showed that defendants intentionally concealed major defects in the equipment in order to encourage Honey Creek to purchase the used crusher. Instead, Honey Creek merely alleges that defendants acted with intent to mislead. "Unsupported assertions and conclusory accusations cannot create genuine issues of material fact as to the existence of fraud." *Blumenstock v. Gibson,* 811 A.2d 1029, 1034 (Pa. Super. 2002). Assuming Honey Creek provided sufficient evidence to establish the remaining elements of a fraudulent inducement claim, Honey Creek failed to produce clear, precise, and convincing evidence of defendants' intent to defraud. Viewing the record in the light most favorable to the non-moving party, the court finds that defendants are entitled to summary judgment on Honey Creek's fraudulent inducement claim.

Finally, Telsmith argues it is entitled to summary judgment on its counterclaim. Telsmith alleges that Honey Creek breached its contract with Telsmith by refusing to pay for replacement parts ordered from Telsmith. Honey Creek argues that it is not required to pay Telsmith because Telsmith has failed in its duty to perform warranty repairs on the plant and equipment. Instead, Honey Creek states that, because the limitation of remedy provision failed its essential purpose, Honey Creek is entitled to all remedies under the U.C.C., including the right to off-set.

"The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." 13 Pa.C.S. §2717. There is no right of setoff unless the breaches occurred as part of the same contract. *Carlisle Corp. v. Uresco Construction Materials,* 823 F. Supp. 271, 274 (M.D. Pa. 1993). The question of whether contracts are interrelated or separate is one of law. *Hellendall Distributors Inc. v. S.B. Thomas Inc.,* 559 F. Supp. 573, 574 (E.D. Pa. 1983).

The contract for the replacement parts and the original agreement are clearly interrelated. Both agreements involved the same parties, Telsmith and Honey Creek. Both agreements also concerned the same equipment. The contract for spare parts was only entered into because of the alleged breach of the first agreement and its warranty. Since the two agreements are interrelated, Honey Creek is entitled to deduct damages if the limitation of remedy provision failed its essential purpose. Summary

judgment is, therefore, inappropriate with respect to Telsmith's counterclaim.

For the foregoing reasons, defendants' motions for summary judgment are granted in part and denied in part.

## ORDER

And now, December 31, 2009, this court having held a hearing on June 3, 2009 to hear defendants' motions for summary judgment with Richard T. Victoria, Esquire, and John J. DeCaro Jr., Esquire, appearing and representing the plaintiff; and Kevin L. Colosimo, Esquire, and Andrew G. Jenkins, Esquire, appearing and representing the defendant Telsmith Inc.; and Stephen L. Grose, Esquire, appearing and representing the defendant Stewart-Amos Equipment Co.; and after a consideration of the arguments presented and submitted by counsel, and a complete and thorough review of the applicable record, the court enters the following order and it is hereby ordered, adjudged, and decreed as follows:

(1) The defendants' motions for summary judgment are granted in part and denied in part as follows:

(a) Summary judgment is granted on plaintiff's claim for fraudulent inducement.

(b) Summary judgment is granted on plaintiff's claim for breach of the implied warranties of merchantability and fitness for a particular purpose.

(c) Summary judgment is in all other respects denied.

(2) The prothonotary shall properly serve notice of this order and attached opinion upon counsel of record as contained in the court's file.